Howard Marc Spector
TBA #00785023
Nathan M. Johnson
TBA #00787779
Spector & Johnson, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380

ATTORNEYS FOR
PETITIONING CREDITORS

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HENRY S. MILLER | § | |
| COMMERCIAL, LLC | § | CASE NO. 09-34422-SGJ-11 |
| | § | |
| DEBTOR. | § | |

**MOTION FOR AN ORDER CONVERTING CASE TO CHAPTER 7**

NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 12A24, DALLAS, TEXAS 75242-1496 BEFORE 4:30 O'CLOCK P.M. ON FEBRUARY 19, 2010 WHICH IS TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

COME NOW, BNC Lake Jackson Village, L.P., Dallas Clubview Gardens, L.P., and Woodside Apartments, L.P. (collectively, the "Petitioning Creditors") and file this

motion for an Order converting the above-captioned case to Chapter 7. In support thereof, the Petitioning Creditors state:

## INTRODUCTION

1. As has become clear in the last few months, Henry S. Miller Commercial, LLC (the "Debtor") has no intention of preserving its estate for the benefit of creditors, let alone the Petitioning Creditors. Rather, the Debtor's management has continued effectuating its scheme to transfer the going-concern value of the Henry S. Miller real estate empire to a newly-formed group of entities controlled by exactly the same people who continue to this day to operate exactly the same business.

2. The Debtor is now little more than an empty shell with potential litigation recoveries against third parties and malfeasance claims against its management. The Debtor's current management is not capable of exercising its independent fiduciary duty to creditors because management is ensnared in a web of conflicting insider relationships, divided loyalties, and related litigation. Because management has amply demonstrated its predilection for violating its fiduciary duties, this Court should convert this case to a liquidating case under Chapter 7 and entrust the remaining assets to a chapter 7 trustee.

## PROCEDURAL BACKGROUND

3. The above captioned case was commenced on July 7, 2009 (the "Petition Date") by the Petitioning Creditors pursuant to 11 U.S.C. § 303. The Petitioning Creditors hold valid and subsisting judgments against the Debtor entered by the 14th Judicial District, Dallas County, Texas on December 1, 2008 in Cause No. 06-12902 (the "Judgment").

4. The Debtor initially contested Petitioning Creditors' involuntary petition, arguing that Petitioning Creditors did not constitute three (3) separate entities for purposes of the bankruptcy filing. Alternatively, the Debtor argued that its appeal of the Judgment constituted a bona fide dispute which would prevent Petitioning Creditors from pursuing involuntary relief. Ultimately, the Court denied or the Debtor abandoned these arguments and consented to entry of an Order for Relief on December 17, 2009.[1]

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## THE DEBTOR'S BUSINESS AND DEBT STRUCTURE

6. The Debtor, together with its four (4) wholly-owned subsidiaries (Henry S. Miller Multi Management, LLC ("Old Multi"), Henry S. Miller Consulting Group, LLC ("Old Consulting"), Henry S. Miller Investment Banking Group, LLC ("Old Banking"), and Henry S. Miller Project Management, LLC ("Old Project")[2]), are the group of entities under which much of the Henry S. Miller real estate business operated prior to 2009.

7. The Debtor's primary secured lending relationship has been with Regions Bank. As of the Petition Date, the Debtor's schedules reflect that Regions Bank was owed $255,000.00, though the Debtor owed Regions Bank as much as $1 million at or near the end of 2008.

8. As of the Petition Date, the Debtor owed approximately $9.524 million in unsecured debts. Of this amount, $8.918 million was owed to the Petitioning Creditors or other creditors which were parties to the Judgment. Of the remaining (approximately)

---

[1] As is customary, the period from the Petition Date through the date on which the Order for Relief was entered will be referred to herein as the "Gap Period."

[2] Statement of Financial Affairs question 18(a).

$600,000.00 claims against the Debtor as of the Petition Date, approximately $520,000.00 was owed to attorneys or affiliates of the Debtor.

9. During the Gap Period, the Debtor voluntarily paid the then-pending claims of ten (10) of the nineteen (19) creditors listed on Schedule F. Accordingly, as of the date of the entry of the Order for Relief, only three (3) unsecured creditors exists with claims against the Debtor, other than those of the Petitioning Creditors and other parties to the Judgment.[3] The three (3) unsecured creditors other than those of the Petitioning Creditors and other parties to the Judgment are the Debtor's attorneys and an affiliate of the Debtor (Henry S. Miller Brokerage, LLC).

10. Also during the Gap Period, either Henry S. Miller Realty Services, LLC ("New Realty") or Henry S. Miller Central Services, LLC ("New Central") acquired the indebtedness held by Regions Bank.[4] Accordingly, either New Realty or New Central is now the largest secured creditor of the estate.

## THE DEBTOR'S OWNERSHIP AND MANAGMENT

11. The Debtor's ownership is comprised of nine (9) people or entities. The Debtor's management is not disclosed on the Debtor's Statement of Financial Affairs. However, based on the testimony at the meeting of creditors, as well as from documents produced by the Debtor, it is believed that managerial power is and has been vested in Sam Kartalis (President/Chief Operating Officer), Vance Miller (Chairman/President and Manager), Robert DuBois (Secretary/Treasurer) and James D. Johnson (Assistant Secretary/Assistant Treasurer/Comptroller).[5]

---

[3] Section 341 Meeting testimony of James D. Johnson at mins. 33-35.

[4] The Comptroller's testimony at the Section 341 meeting on this issue was conflicting. In either event, the new secured creditor is an affiliate of the Debtor.

[5] Section 341 Meeting testimony of James D. Johnson at mins. 24-29, 31-33.

## THE DEBTOR'S ASSETS

12. The Debtor's schedules reflect little in the way of assets. According to the Debtor's Schedule B, the Debtor had, on the Petition Date, approximately $77,000.00 in cash. The testimony of the Debtor's comptroller at the meeting of creditors indicated that this balance had dwindled to about $30,000.00 as of December 2009.

13. The Debtor's Schedule B also shows a payable from certain individuals in the aggregate amount of $135,553.00 as of the Petition Date; but again, the testimony of the Debtor's comptroller at the meeting of creditors indicated that this balance had been reduced during the Gap Period.

14. The Debtor's Schedule B shows an $847,458.87 debt owing by New Central as of the Petition Date. The testimony of the Debtor's comptroller at the meeting of creditors indicated that this balance had been reduced since the Petition Date, but the Debtor does not receive regular payments from its affiliate on the debt.[6]

15. Finally, the Debtor indicated that its interest in its wholly-owned subsidiaries (i.e. Old Multi, Old Consulting, Old Banking, and Old Project) had no value.

16. The Debtor failed to list three material assets: (i) its malpractice claims against the attorneys which represented the Debtor in the suit giving rise to the Judgment; (ii) its interest in its errors and omissions insurance policy; and (iii) its bad faith claim against its insurer AIG.

## THE DEBTOR'S ATTEMPTED REINCARNATION POSES A DIRECT CONFLICT OF INTEREST

17. In response to the entry of the Judgment, the Debtor's management, together with its attorneys, undertook a scheme to establish a new parent corporation –

---

[6] Section 341 Meeting testimony of James D. Johnson at mins. 5-6.

New Realty – and a corresponding group of subsidiaries –Henry S. Miller Brokerage, LLC ("New Brokerage"), Henry S. Miller Realty Management, LLC ("New Realty Management"), Henry S. Miller Consulting, LLC ("New Consulting"), Henry S. Miller Financial Services , LLC. ("New Financial"), Henry S. Miller Central Services, LLC (already defined *supra* as New Central), Henry S. Miller Projects, LLC. ("New Projects") and Henry S. Miller Brokerage II, LLC ("New Brokerage II" and together with New Financial, New Central, New Realty Management, New Realty, New Brokerage, New Consulting, New Projects, the "New Entities"). The New Entities mirror not only the names, but the functions, of the Debtor, Old Multi, Old Consulting, Old Banking, and Old Project[7].

18. The Texas Secretary of State indicates that the New Entities were each organized by Sam Kartalis on or about October 29, 2008. Each of the New Entities are managed by Vance C. Miller.[8]

19. Because of its existing relationship with Regions Bank and the start up capital needs of the New Entities, the Debtor's management loaned approximately $1 million to the New Entities between late 2008 and 2009 (i.e. after the rendition of the Judgment).[9] Additionally, the Debtor and its subsidiaries sold virtually all of their personal property to the New Entities, allowed virtually all of their existing contractual relationships to expire or to be terminated so that they could be renewed by the New

---

[7] See Exhibits "A1-A8."
[8] See Exhibit "A1-A8."
[9] Section 341 Meeting testimony of James D. Johnson at mins. 5-6; See deposition transcript of James Johnson, October 16, 2009 at pp. 20-22 attached as Exhibit "B." These loans are the source of the $847,458.87 debt owing by New Central as of the Petition Date.

Entities, and transitioned all of their employees and independent brokers to the New Entities.[10]

20. On or about January 1, 2009, Mr. Kartalis circulated a company-wide directive that no new business was to be booked in the name of the Debtor or its subsidiaries and that all future business was to be contracted for in the name of New Entities.[11] No doubt as a result of this decision, the Debtor's gross income declined from $10.7 million in 2008 to $1.17 million in 2009.

21. The Debtor admits to virtually all of the foregoing allegations. Indeed, Mr. Pronske (who purports to be representing the debtor in possession, despite the fact that his firm has not filed an application to be employed in the case and compensation paid to his firm has not been disclosed in filings with this Court) is the source of this information and all but declared them immune from attack by his putative client, the bankruptcy estate.[12]

22. These transactions, at a minimum, raise a variety of questions. Did management violate its duty of loyalty to the Debtor? Did management commit waste or denude the Debtor? Are the New Entities alter egos of the Debtor? Are the New Entities recipients of tangible or intangible property fraudulently conveyed by the Debtor? This Court need not determine, by this Motion, whether the Debtor or its management have engaged in anything untoward. Rather, the Court need only conclude that the transactions between the New Entities and the Debtor should be investigated by a neutral trustee, instead of the perpetrators themselves.

---

[10] See Dallas Morning News, 12 December 2009 at Exhibit "C."
[11] See Exhibit "D."
[12] See attached Exhibit "C."

**THE DEBTOR'S EXISTING DEBTOR/CREDITOR RELATIONSHIPS WITH AFFILIATES POSES A DIRECT CONFLICT OF INTEREST**

23. The Debtor's extensive and labyrinthian relationship with New Central, an affiliated company controlled by Mr. Kartalis and Mr. Miller, also creates a direct conflict of interest with the Debtor's management. As stated above, the Debtor's schedules show that the receivable from New Central owed to the Debtor is the Debtor's single largest asset. Because the loan to New Central and its affiliates was essential to providing the start up capital for the New Entities, the Debtor's management cannot be expected to undertake an objective effort to collect these amounts or review whether the underlying loan was part of a larger fraudulent scheme.

24. Similarly, the Debtor's secured debt is also owed to an affiliate controlled by Mr. Kartalis and Mr. Miller – (either New Realty or New Central). While the Debtor's schedules reflect that its secured debt was owed to Regions Bank as of the Petition Date, one of these New Entities has become the obligee of the Debtor's secured indebtedness. The Debtor's management cannot be expected to adequately or independently assess whether it has defenses to the claims of the New Entity assignee of Regions Bank, or whether the Debtor's transactions with Regions Bank or the New Entities were part of a larger fraudulent scheme.

25. An independent trustee is needed to sort through all the complex contractual and substantial relationships between the Debtor and its affiliates (including the New Entities) to determine whether any of those relationships give rise to causes of action. Financial statements provided by the Debtor reflect extensive prepetition intercompany dealings between the Debtor, New Central, New Realty, and Regions

Bank. Transfers of this magnitude between insiders should be investigated by an independent party; the Debtor and its management obviously cannot do that.

## THE DEBTOR IS NOW IN A LIQUIDATION AND LITIGATION MODE

26.     The Debtor has no employees, no operations and no material executory contracts.  Instead, the Debtor has only *de minimis* accounts receivable from insiders (including management and relatives of management) and former employees.  The Debtor's most significant note receivable is owed by an affiliate.

27.     The Debtor's subsidiaries also have no employees.  Old Multi (which would not per se be affected by conversion of the Debtor's case) manages no more than two properties through employees of the New Entities.  Old Consulting strictly collects receivables which the Debtor's comptroller estimated to aggregate to less than $30,000.00.[13]

28.     Neither the Debtor, nor its subsidiaries, is booking new business of any kind.[14]

---

[13] Section 341 Meeting testimony of James D. Johnson at mins. 14-19.

[14] At his deposition, James Johnson, the comptroller of the Debtor, testified in pertinent part:

> Q. Okay. Looking back at Exhibit Number 2 in front of you, you told me in May -- and I just want to make sure it hasn't changed -- that Henry S. Miller Consulting Group was taking no new business since January 1, 2009. Is that still correct?
> A. Yes.
> Q. You told me that Henry S. Miller Multi-Management, LLC was taking no new business since January 1, 2009. Is that still correct?
> A. Yes.
> Q. You told me that Henry S. Miller Investment Services, LLC was also taking no new business since January 1, 2009. Is that still correct?
> A. Yes.
> Q. And you told me that Henry S. Miller Commercial, LLC was also taking no new business at all since January 1, 2009. Is that still correct?
> A. Yes.

See Exhibit "B," at pp. 15-16.

**ARGUMENT**

29. The Petitioning Creditors request conversion of this case to a case under Chapter 7. 11 U.S.C. § 1112 provides that a court may convert a case for "cause", including but not limited to the examples listed in 11 U.S.C. § 1112(b)(1) through (b)(10).[15] Similarly, because conversion of the case to Chapter 7 would result in the appointment of a Chapter 7 trustee, cases interpreting "cause" under 11 U.S.C. § 1104 are instructive.

30. In the context of a debtor with no ongoing operations, courts have interpreted "cause" under § 1112 to include the conflicts and divided loyalties of management. The presence of a conflict of interest constitutes cause for removal of the debtor in possession from administration of this case. *See In re Graf Bros., Inc.,* 19 Bankr. 269 (Bankr. D. Me. 1982) (liquidation by a debtor in possession should not be permitted and conversion to Chapter 7 is appropriate in Chapter 11 liquidation case where there may be a conflict of interest between the debtor and those with whom the debtor is dealing during the liquidation phase); *cf. In re L.S. Good & Co.,* 8 Bankr. 312 (Bankr. N.D. W.Va. 1980) (removal of present management and appointment of trustee is appropriate where there is a strong probability of conflict of interest such as to hinder management's ability to make impartial investigations and decisions in pursuing claims on behalf of the estate); *In re William Vaughn & Co., Inc.,* 40 Bankr. 524, 526 (Bankr. E.D. Pa. 1984) (removal of debtor in possession and appointment of trustee appropriate because transfer to debtor's president would not likely be subjected to requisite vigorous scrutiny); *In re Nautilus of New Mexico,* 83 Bankr. 784, 789 (Bankr. D. N.M. 1988)

---

[15] "The list [provided in 11 U.S.C. § 1112(b)(1) through (10)] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.Rep. 595, 95th Cong., 1st Sess. 406 (1977).

(debtor in possession has fiduciary duty to preserve estate assets for benefit of creditors and when incapable of performing that duty, trustee is properly appointed).

31. While "cause" under 1104(a) ranges across a broad variety of circumstances, courts have found "cause" to appoint a trustee where the movant can establish gross mismanagement. *See*, *e.g.*, *In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (citing "gross mismanagement" as a ground for appointment of a trustee); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168-69 (Bankr. S.D.N.Y. 1990) (noting gross mismanagement leading to inaccurate projections and the resultant loss to creditors); *In re Cardinal Indus., Inc.*, 109 B.R. at 767 (accepting creditors' committee allegations of inaccurate financial forecasts, failure to stem cash losses since the petition date, among other concerns). Similarly, courts have found "cause" in the presence of conflicts of interest involving debtor's management and its creditors. *See, e.g.*, *In re Cajun Elec. Power Coop., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996) (adopting on rehearing dissent in *In re Cajun Elec. Power Coop., Inc. v. Central Louisiana Elec. Co., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 69 F.3d 746, 751 (5th Cir. 1995)) *cert. denied*, 117 S. Ct. 51 (1996); *Colorado-Ute Elec.*, 120 B.R. at 174. Further, courts have found "cause" where deep-seeded conflict and acrimonious relations between the debtor and the interested parties prevents resolution of disputes. *See, e.g., In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 472-74 (3d Cir. 1998); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 n.11 (Bankr. E.D.N.Y. 1989).

32. The circumstances detailed above indisputably demonstrate sufficient cause for the conversion of this case to chapter 7. The Debtor's management is (or at least should be) hopelessly conflicted between their obligations to the New Entities and

their obligations to the Debtor and its subsidiaries. Their past decisions to let the Debtor and its subsidiaries "die on the vine" while they participated in the transfer of the tangible assets and enterprise value of the Henry S. Miller business to the New Entities requires the replacement of the Debtor's management through the appointment of a trustee. *See In re Bellevue Place Assoc.*, 171 B.R. at 623-25; *In re Cajun Elec. Power Coop., Inc.,* 191 B.R. 659, 662 (Bankr. M.D. La. 1995), *vacated by* 69 F.3d 46 (5th Cir. 1995), *aff'd on reh'g*, 74 F.3d 599 (5th Cir. 1996).

## CONCLUSION

33. In light of the Debtor's declining revenues, liquidation mode and the obvious and extensive conflicting loyalties of management, the Court should convert this case to a case under chapter 7. The appointment of a chapter 7 trustee will benefit the Debtor's estate and creditors because a chapter 7 trustee will have the sole motivation of maximizing the value of the Debtor's estate for creditors. Moreover, the trustee would be an independent party, free from any conflicts of interest, and will likely vigorously pursue all actions that are in the Debtor's best interests. Such impartiality is desperately needed in this case.

Dated: January 29, 2010.

Respectfully submitted,

By:    */s/ Howard Marc Spector*
       Howard Marc Spector
       TBA #00785023
       Nathan M. Johnson
       TBA #00787779

SPECTOR & JOHNSON, PLLC
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380

COUNSEL FOR THE
PETITIONING CREDITORS

## CERTIFICATE OF CONFERENCE

On January 29, 2010, I transmitted a copy of the foregoing pleading to Rahkee Patel of Pronske and Patel. Ms. Patel was unable to confer on the relief requested. Accordingly, the Motion is being submitted to the Court for resolution.

       */s/ Howard Marc Spector*
       Howard Marc Spector

## CERTIFICATE OF SERVICE

On January 29, 2010, I hereby certify that a true and correct copy of the above document was served via regular U. S. mail to the parties listed in the attached service list.

       */s/ Howard Marc Spector*
       Howard Marc Spector