## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **HENRY S. MILLER** | § | **Case No.  09-34422-SGJ-11** |
| **COMMERCIAL, LLC,** | § | |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11, AS MODIFIED AT CONFIRMATION HEARING ON JUNE 30, 2010

Dated: June 25, 2010
Dallas, Texas

Stephanie D.  Curtis
  Texas State Bar No.  05286800
Mark A.  Castillo
  Texas State Bar No.  24027795
THE CURTIS LAW FIRM, PC
901 Main Street, Suite 6515
Dallas, Texas  75202
Telephone: 214.752.2222
Facsimile:  214.752.0709

COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION

## DEBTOR'S PLAN OF REORGANIZATION

Henry S. Miller Commercial, LLC (the "Debtor") proposes the following Plan of Reorganization for the Debtor under Chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

### 1.1    Definitions.

The capitalized terms used herein shall have the respective meanings set forth below:

"Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case incurred on or before the Effective Date entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, including Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28 of the United States Code.

"Allowance Date" means the date on which a Claim becomes an Allowed Claim.

"Allowed" when used with respect to any Claim, except for a Claim that is an Administrative Expense, shall mean (l) such Claim to the extent it is not a Contested Claim; (2) such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (3) a Contested Claim, proof of which was timely filed with the Bankruptcy Court and (a) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court, or (b) as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

"Assets" means, with respect to the Debtor, all of the right, title, and interest in and to property of whatsoever type or nature owned by the Debtor as of the Petition Date, together with property subsequently acquired by the Debtor (including any recoveries arising from any restitution order), and including, but not limited to, the Estate Actions, and all other property defined in section 541 of the Bankruptcy Code, any proceeds derived therefrom, the available insurance or insurance policies, or any right, claim or cause of action of the estate including without limitation any asset wherever located or pursued.

"Ballot" shall mean the ballot to be used by holders of claims to cast their votes to accept or reject the Plan.

"Balloting Agent" shall mean the Person designated by the Debtor to receive Ballots as reflected on the face of the Ballot.

"Bankruptcy Case" shall mean the involuntary case commenced under chapter 7, and converted to chapter 11 of the Bankruptcy Code, for the Debtor under Case No. 09-34422-SGJ-11.

"Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

"Bankruptcy Court" or "Court" shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Bankruptcy Case.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

"Bar Date" shall mean the final date for filing of proofs of Claims or Interests in the Debtor's Bankruptcy Case set by the Bankruptcy Court as April 21, 2010 or such other date as may apply to a particular Claim or Interest pursuant to a duly entered order of the Bankruptcy Court.

"Business Day" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"Cash" shall mean legal tender of the United States of America or Cash equivalents.

"Claim" shall have the meaning as set out in section 101 of the Bankruptcy Code.

"Collateral" shall mean any property of the Debtor subject to a valid and enforceable Lien to secure the payment of a Claim.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128, scheduled for June 30, 2010 at 1:30 p.m. Central Prevailing Time, and as it may be continued from time to time, on confirmation of the Plan.  Unless expressly stated otherwise in the Plan, all references to the Confirmation Hearing or the date of the Confirmation Hearing shall mean the date the Confirmation Hearing commences.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan.

"Contested" when used with respect to a Claim, shall mean a Claim against the Debtor (1) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated, regardless of whether a proof of claim has been filed or not; (2) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (3) that is not listed in the Debtor's Schedules, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (4) as to which an objection has been filed.  Notwithstanding the foregoing, after the Objection Deadline, only (a) Claims to which an Objection has been filed, including but not limited to Claims listed on the Debtor's Schedules, and (b) Claims that were not timely filed shall be deemed Contested Claims with respect to Claims for which a proof of Claim has been filed.

"Contested Claims Escrow" shall mean an escrow account created by the Reorganized Debtor as described in section 11.9 of the Plan.

"Contracts" shall mean all "leases" and "executory contracts" as such terms are used within section 365 of the Bankruptcy Code to which a Debtor was a party as of its respective Petition Date.

"Conversion Date" shall mean December 17, 2009, constituting the date of entry of the Court's Order converting the Bankruptcy Case from Chapter 7 to Chapter 11 of the Bankruptcy Code.

"Creditors" shall mean the holders of Allowed Administrative Expenses and/or Allowed Claims.

"Debtor" shall mean Henry S. Miller Commercial, LLC.

"Deficiency Amount" shall mean, with respect to a Secured Claim, the amount by which the Allowed Claim exceeds the sum of (1) any set-off rights of the holder of such Claim against a Debtor under sections 506 and 553 of the Bankruptcy Code, and (2) the Net Proceeds realized from the disposition of the Collateral securing such Claim, or, if such Collateral is not liquidated to Cash, the value of the interest of the holder of the Claim in the Debtor's interest in the Collateral securing such Claim, as determined by the Bankruptcy Court under section 506 of the Bankruptcy Code.

"Diamond State Litigation" shall mean the pending lawsuit, filed by the Debtor on February 4, 2009, in the 101st Judicial District, in the District Court of Dallas County, Texas, against Diamond State Insurance Company, Steven K. Terry, and the law firm of Newsom, Terry & Newsom, LLP, Case No. 09-01306E.

"Disallowed" when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

"Disclosure Statement" shall mean the Debtor's First Amended Disclosure Statement under 11 U.S.C. § 1125 in support of the Debtor's Plan of Reorganization, dated April 29, 2010, either in its present form or as it may be hereafter be altered, amended, or modified from time to time.

"Disclosure Statement Order" shall mean the order of the Bankruptcy Court approving the Disclosure Statement and solicitation procedures, and setting the hearing on confirmation of the Plan.

"Effective Date" shall mean a Business Day selected by the Debtor after both (i) the Confirmation Order has become a Final Order and is not stayed, and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in Article XIV of the Plan. Unless the Court orders otherwise upon cause shown, in no event shall the Effective Date be later than thirty (30) days after the Confirmation Order has become a Final Order.

"Estate Actions" shall mean any and all claims, causes of action and enforceable rights of the Debtor against third parties, or assertable by the Debtor on behalf of their creditors or the estate, whether brought in the Bankruptcy Court or any other forum for recovery or avoidance with respect to:

(a)     Obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 or other sections of the Bankruptcy Code or any applicable law;

(b)     Damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon—

(i) indebtedness owing to Debtor, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate laws, (vi) breaches of fiduciary or agency duties, (vii) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (viii) any theory of recovery against a lending institution for any action causing harm to the Debtor, (ix) equitable or legal subordination, (x) malpractice, (xi) appeals of judgments, or (xii) any other action listed in Bankruptcy Rule 7001;

(c)     Damages or other relief based upon any other claim of Debtor to the extent not specifically compromised or released pursuant to this Plan or an agreement referred to, or incorporated into, this Plan; and

(d)     Any and all litigation and causes of action listed in the Schedules, the Disclosure Statement, the Plan, or any schedules or attachments thereto.

"Estimation Order" shall mean any order of the Bankruptcy Court estimating a Claim pursuant to Bankruptcy Rule 3018 or pursuant to section 502(c) of the Bankruptcy Code.

"Fee Application" shall mean an application of a Professional Person under section 330, 331, or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Case.

"Fee Claim" shall mean a Claim against the Debtor under section 330, 331, or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

"Final Decree" means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

"Final Order" shall mean (l) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (2) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that (i) no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order , and (ii) if such order is the Confirmation Order, subsection (2) supra shall only apply if a stay of the Confirmation Order is in effect.

"Gap Period" shall mean the period of time from the Petition Date to the date prior to the Conversion Date.

"General Unsecured Claim" shall mean any Claim against the Debtor that is not a Priority Unsecured Claim, a Secured Claim, an Administrative Expense, a Penalty Claim, a Disallowed Claim, or a Subordinated Claim.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest" shall mean any "equity security" as defined in section 101(16) of the Bankruptcy Code.

"Judgment" shall mean the judgment obtained by the Judgment Creditors against the Debtor on or about December 1, 2008, in the approximate aggregate amount of $8,918,719.99, which judgment is the subject of a pending appeal in the Court of Appeals for the Fifth District of Texas at Dallas, No. 05-08-01726-cv.

"Judgment Creditors" shall mean the holders of the Judgment against the Debtor, including BNC Lake Jackson Village, LP, BNC Regency Walk, LP, BNC Regency, LLC, Dallas Bayou Bend, Ltd, Dallas Clubview Gardens, Ltd, Pecan Square, Ltd, and Woodside Apartments, Ltd, BNC Meadowbrook Crossing LP, Meadowbrook, LLC, Park Ridge Apartments LP, and South Loop Associates, LP, or any of their respective successors or assignees.

"Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

"Net Proceeds" shall mean amounts in Cash actually received and retained by the Debtor as a result of liquidation of assets or litigation of claims, in either case after reduction for costs of collection, including all attorneys', accountants', appraisers, brokers, consulting experts and testifying experts, expert witnesses, and other professionals' fees and expenses and costs of court, and also after reduction of any and all non-refundable advances described herein, which are reimbursable from the first proceeds to be recovered in the Diamond State Litigation.

"Objection Deadline" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Article XII of the Plan.

"Ordinary Course Professional" shall mean any Professional Person employed by the Debtor pursuant to the Final Order of the Bankruptcy Court entered on March 24, 2010 at Docket No. 109 authorizing retention without the necessity of filing separate retention applications with the Bankruptcy Court, except as may be required by such Final Order of the Court.

"Penalty Claim" shall mean Claims for penalties or punitive damages, including Claims denominated as "interest" or "liquidated damages" that the Bankruptcy Court determines to be punitive in nature.

"Person" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land busts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

"Petition Date" shall mean July 7, 2009, constituting the date of filing of the involuntary chapter 7 petition by the Petitioning Creditors against the Debtor under Chapter 7 of the Bankruptcy Code.

"Petitioning Creditors" shall mean BNC Lake Jackson Village, L.P. ("BNC"), Dallas Clubview Gardens, L.P. ("DCG") and Woodside Apartments, L.P. ("Woodside").

"Plan" shall mean this Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

"Plan Documents" shall mean the documents that aid in effectuating the Plan as specifically identified as such herein or as attached as exhibits hereto, which will be substantially in the respective forms filed by the Debtor with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

"Plan Participants" shall mean the Debtor, the Reorganized Debtor, and members, managers, officers, employees and advising professionals of all the preceding, all as of and after the Confirmation Date.

"Priority Tax Claim" shall mean a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Priority Unsecured Claim" shall mean any Claim (other than an Administrative Expense) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code, not including priority tax Claims.

"Professional Person" shall mean any person retained or to be compensated pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

"Pro Rata Share" shall mean the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Contested Claims, but not including Disallowed Claims.

"Reorganized Debtor" shall mean the Debtor, as reorganized on and after the Effective Date.

"Representatives" shall mean any principal, agent, responsible party, officer, manager, member, financial advisor, attorney, accountant, or other professional persons of the Debtor, including but not limited to The Curtis Law Firm, PC, Geary, Porter & Donovan, Shields, Britton & Fraser, PC, Strasburger & Price, LLP, and Shannon, Gracey, Ratliff & Miller, LLP, and any of his, its, or their employees, attorneys, accountants, professionals, assistants, or contractors; provided, however, that "Representatives" shall not at any time include either (i) the Debtor's insurers or insurance agents, including, without limitation, Diamond State Insurance Company, or (ii) Steven K. Terry or the law firm of Newsom, Terry & Newsom, LLP.

"Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended.

"Secured Claim" shall mean a prepetition Claim against the Debtor secured by a Lien on property of the Debtor, which Lien is valid, perfected, and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and is duly established in the Bankruptcy Case, but only to the extent of the value of the Collateral that secures payment of such Claim.

"Stock Purchaser(s)" shall mean that certain non-debtor stock purchaser or purchasers who shall (i) pay Four Hundred Thousand Dollars ($400,000.00), by the Effective Date, to purchase the new equity in the Reorganized Debtor to fund the Reorganized Debtor's ability to negotiate, prepare, solicit, prosecute, confirm, and make Cash distributions under, the Plan; and (ii) advance funds necessary for the Reorganized Debtor to prosecute the Diamond State Litigation as provided for under the Plan.  The Stock Purchaser(s) shall be an operating entity and disclosed in advance of the Confirmation Hearing.

"Subordinated Claim" shall mean any Claim against the Debtor (1) subordinated by contract or by order of the Bankruptcy Court to the right of payment of General Unsecured Claims (2) that would be paid pursuant to Bankruptcy Code section 726(a)(2)(C), (a)(3), (a)(4) or (a)(5), if this Bankruptcy Case were a case under chapter 7 of the Bankruptcy Code.

"Voting Claim" shall mean a Claim of a holder that is (i) Allowed, (ii) impaired, and (iii) receiving or retaining property on account of such Claim pursuant to the Plan.

"Voting Deadline" shall mean June 11, 2010 at 5:00 p.m.  Central Prevailing Time, the date and time set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Debtor's counsel.

"Withheld Distribution Amount" shall have the meaning as set forth in section 11.9 of the Plan.

**1.2     Interpretation.**

For purposes of the Plan, (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to articles and exhibits are references to articles or exhibits in the Plan; (iii) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (iv) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (v) the rules of construction outlined in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

**1.3     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4     Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5     Integration Clause.**

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, their creditors, their Interest holders, and other parties-in-interest upon the matters herein.  Parole evidence shall not be admissible in an action regarding this Plan or any of its provisions.

**1.6     Plan Documents.**

The Plan Documents are incorporated into and are part of the Plan as if set forth in full herein.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

**2.1     Claims and Interests Classified.**

For purposes of organization, voting, and all confirmation matters, all Claims (except Administrative Expenses and Priority Tax Claims) and all Interests shall be classified as set forth in Article IV of the Plan.  This Plan shall provide distributions only to Allowed Claims; nothing within this Plan shall provide for the Allowance of any Claim.

**2.2**    **Administrative Expense and Priority Tax Claims.**

As provided in section 1123(a)(l) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article V of the Plan.

**2.3**    **Claims and Interest.**

The Plan classifies the Claims against and Interests in the Debtor as follows:

Class 1.1: Secured Tax Claims

Class 1.2: Secured Non-Tax Claims of Henry S. Miller Realty Services, Inc. (as assignee from

Regions Bank).

Class 1.3: [Reserved]

Class 2: Priority Unsecured Claims

Class 3.1: General Unsecured Broker Claims

Class 3.2: General Unsecured Litigation Claims Subject to Appeal

Class 3.3: Other General Unsecured Claims

Class 4: Subordinated and Penalty Claims

Class 5: Interests

**2.4**    **Claims May Be in More Than One Class.**

An Allowed Claim is part of a particular Class only to the extent that the Allowed Claim qualifies within the definition of that Class and such Claim shall be part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

## ARTICLE III

**IDENTIFICATION OF IMPAIRED CLASSES; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS**

**3.1**    **Impaired Classes of Claims and Interests.**

All Classes of Claims and Interests are impaired under the Plan.

**3.2**    **Impairment Controversies.**

If a controversy arises as to whether any Claim or equity Interest or any class of Claims or class of Interests is impaired under the Plan, the Bankruptcy Court shall rule at the appropriate time on any such dispute.

**3.3**    **Classes Entitled to Vote.**

Classes 1.1, 1.2, 1.3, 2, 3.1, 3.2, and 3.3 are impaired under the Plan and are entitled to vote to accept or reject the Plan.  Classes 4 and 5 are not receiving or retaining any property under the Plan, are deemed to have rejected the Plan, and may not vote to accept or reject the Plan.

**3.4**    **One Vote per Holder.**

If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number and amount of Claims in such Class voting on this Plan.

**ARTICLE IV**

**PROVISIONS FOR TREATMENT OF CLAIMS AND
EQUITY INTERESTS UNDER THE PLAN**

The classes of Claims against and the Interests in the Debtor shall be treated under the Plan as set forth below:

**4.1**    **Class 1 – Secured Claims.**

Each holder of an Allowed Secured Claim will be treated in a separate class and shall receive as soon as practicable after the Effective Date (or, if later, the Allowance Date) on account of its Allowed Secured Claim: (a) payment of the proceeds of the sale of the Collateral securing such Allowed Secured Claim up to the Allowed Amount of such Allowed Secured Claim, with interest at the rate set forth in the Secured Claimant's prepetition loan documents; or (b) such holder's Collateral if and to the extent the Secured Claim is Allowed.  Notwithstanding the terms of any prepetition agreements or loan documents with the Debtor, no holder of a Secured Claim shall be entitled to foreclose upon or exercise other statutory, common law, or equitable rights against its collateral except as may be expressly set forth in the Plan or by Final Order of the Court.  To the extent any disputes concerning the validity or priority of Liens against the Collateral securing or purporting to secure any Secured Claim in this Class have not been resolved before the Confirmation Hearing, such disputes shall be resolved by the Bankruptcy Court upon notice and hearing.

**4.1(a)**    **Class 1.1 Secured Tax Claims**.

Allowed Claims in Class 1.1 shall be paid in full in Cash within thirty (30) days of the Effective Date.

**4.1(b)**    **Class 1.2 Secured Non-Tax Claims of Henry S. Miller Realty Services, Inc. (as assignee from Regions Bank)**.

The Allowed Secured Non-Tax Claim in Class 1.2 shall receive distributions from liquidation of its collateral assets of the estate as described in Articles VII-IX of the Plan.  As of the Petition Date, Class 1.2 was secured only as to Debtor's remaining accounts receivable.  The Reorganized Debtor shall be empowered to make multiple distributions to such Allowed Secured Non-Tax Claim in accordance with the terms of the Plan.  Any deficiency amount from such Allowed Secured Non-Tax Claim shall be entitled to treatment as a Class 3.3 Other General Unsecured Claim.

**4.1(c)**    **Class 1.3 Secured Non-Tax Claims of [Reserved]**.

[Reserved].

**4.2**    **Class 2 – Priority Unsecured Claims Impaired.**

After payment of Allowed Secured Claims and Allowed Administrative Expense Claims each holder of an Allowed Priority Unsecured Claim shall receive as soon as practicable, but no later than ninety (90) days after the

Effective Date (or, if later, the Allowance Date), on account of its Allowed Priority Unsecured Claim a single Cash payment from the Reorganized Debtor equal to the Allowed amount of such claim.

### 4.3    Class 3 – General Unsecured Claims.

Allowed General Unsecured Claims in Class 3 shall be treated in the following separate classes.

### 4.3(a) Class 3.1 – General Unsecured Broker Claims.

Allowed Claims in Class 3.1, if and when Allowed, shall be comprised of those Claims held by prior brokers of the Debtor who maintain contingent or unliquidated Claims against the Debtor for commissions based upon their prepetition services to the Debtor.  The holders of such Class 3.1 Claims, if and when Allowed and deemed non-contingent and liquidated, shall be entitled to payment of their commissions within the later of (a) one hundred (100) days of the Effective Date, and (b) thirty (30) days of its Allowance as no longer contingent and unliquidated.

### 4.3(b) Class 3.2 – General Unsecured Litigation Claims Subject to Appeal.

Allowed Claims in Class 3.2, if and when Allowed, shall be comprised of those Claims held by the Judgment Creditors, including BNC Lake Jackson Village, LP, BNC Regency Walk, LP, BNC Regency, LLC, Dallas Bayou Bend, Ltd, Dallas Clubview Gardens, Ltd, Pecan Square, Ltd, and Woodside Apartments, Ltd, BNC Meadowbrook Crossing LP, Meadowbrook, LLC, Park Ridge Apartments LP, and South Loop Associates, LP, which Claims, as of the date of the Plan, are disputed by the Debtor and are subject to a pending appeal.  Class 3.2 shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided.

The Debtor shall pay the holders of Allowed Claims under Class 3.2 the amount of (a) $100,000.00 Cash on the Effective Date of the Plan, which is contemplated to be on or before July 15, 2010, (b) another $100,000.00 Cash within six (6) months thereafter, but no later than December 15, 2010, and (c) $20,000.00 Cash per quarter thereafter for a maximum of ten (10) quarters, beginning on March 15, 2011, as non-refundable advances toward payment on the Judgment, up until the date a judgment is rendered in the Diamond State Litigation. These payments shall be made payable to the IOLTA account of Stanley Iola, LLP ("Stanley"), who shall act as the distribution agent for the Class 3.2 creditors, and distribute to each claimant its Pro Rata Share.  Notwithstanding the foregoing, once these payments set forth above are paid to Stanley, the Debtor shall have no further obligation to make any of these foregoing described payments to any holder of an Allowed Claim under Class 3.2 and shall be entitled to the Exculpation and Immunity Regarding Distributions in section 11.12 of the Plan as to these certain Plan payments.

In addition to the distributions set forth in the preceding paragraph, the Debtor shall also pay the holders of Allowed Claims under Class 3.2, if as and when such claims are Allowed,

(i)    100% of the Net Proceeds of the Diamond State Litigation from the first $5 million of gross proceeds actually recovered by the Debtor, plus

(ii)    70% of any Net Proceeds of the Diamond State Litigation of any gross proceeds actually recovered by the Debtor in excess of $5 million but less than the full amount of the Allowed Claims in Class 3.2; plus

(iii)    30% of any Net Proceeds of the Diamond State Litigation over and above the amount of the Allowed Claims in Class 3.2.

All other Net Proceeds of the Diamond State Litigation will be retained by the Reorganized Debtor. Payments to Class 3.2 shall be made payable to the IOLTA account of Stanley, who shall act as the distribution agent for the Class 3.2 creditors, and distribute to each holder of a Class 3.2 claim its Pro Rata Share. Notwithstanding the foregoing, once the payments as set forth above are paid to Stanley, the Debtor shall have no further obligation to make any of the foregoing described payments to any holder of an Allowed Claim under Class 3.2 and shall be entitled to the Exculpation and Immunity Regarding Distributions in section 11.12 of the Plan.  All payments made to a holder of a Class 3.2 Claim shall be applied to reduce the principal amount of the Claim, once Allowed, pursuant to section 4.6 of the Plan.

In the event any of the Judgment Creditors, or any other their respective principals, agents, representatives, transferees, assigns or attorneys, including Stanley, shall ever collect any amounts owed under the Judgment from Steven Defterios or from their Stowers Demand(s) or other separate claims made in the Diamond State Litigation, such amount(s) shall be credited to the amount of the Allowed Claims in Class 3.2 and shall reduce, dollar for dollar, the amount to be paid by the Debtor to the holders of the Allowed Claims under Class 3.2.

In connection with prosecution of the Diamond State Litigation, neither the Debtor nor the Reorganized Debtor shall seek contribution or recovery from any of the Judgment Creditors of fees, costs, or expenses related to the prosecution of the Debtor's claims against Diamond State Insurance Company, Newsom, Terry & Newsom, LLP, or Steven K. Terry in the Diamond State Litigation.

### 4.3(c) Class 3.3 – Other General Unsecured Claims.

Allowed Claims in Class 3.3 shall be comprised of all Allowed General Unsecured Claims other than those Claims in Classes 3.1 or 3.2.  Such Class 3.3, if and when Allowed, shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided.  After payment of Allowed Secured Claims, Allowed Administrative Expense Claims, and Allowed Priority Unsecured Claims, if any, each holder of an Allowed General Unsecured Claim under Class 3.3 will receive its Pro Rata Share of $50,000.00 within one hundred (100) days of the Effective Date.  No Class subordinate to or junior to Class 3.3 will receive a distribution unless and until Allowed Class 3.3 Claims are paid in full, without interest.

### 4.4      Class 4 – Subordinated Claims and Penalty Claims.

The holders of Subordinated Claims, Penalty Claims, and any other Claims against the Debtor not otherwise expressly provided for in this Plan shall not receive any distributions under the Plan on account of such Claims.

### 4.5      Class 5 – Interests in the Debtor.

All existing Interests shall be canceled on the Effective Date and shall receive no distributions or payments whatsoever under the Plan on account of such Interests.  New Interests in the Reorganized Debtor shall be issued pro rata to the Debtor's Stock Purchaser(s).

### 4.6      Application of Payments to Claims.

Amounts paid to holders of any Claims against the Debtor shall be allocated first to the principal amounts of such Claims, with any excess being allocated to interest that has accrued on such Claims but remains unpaid. Except as set forth in the second paragraph of Section 4.3(b) of the Plan, only holders of Allowed Claims will receive a distribution under the Plan.

### ARTICLE V

### PROVISIONS FOR TREATMENT OF
### UNCLASSIFIED CLAIMS UNDER THE PLAN

### 5.1      Treatment of Administrative Expenses.

All Administrative Expenses against the Debtor shall be treated as follows:

(a)      Time For Filing Administrative Expenses.

The holder of an Administrative Expense, other than (1) a Fee Claim or (2) a Claim for 2010 ad valorem property taxes, must file with the Bankruptcy Court and serve on the Debtor and its counsel notice of such Administrative Expense within thirty (30) days of the occurrence of the Effective Date of the Plan.  Such notice must include at a minimum: (1) the name of the holder of the Claim; (2) the amount of the Administrative Expense; and (3) the basis of the Administrative Expense.  Failure to file and serve this notice timely and properly shall result

in the Administrative Expense being forever barred and discharged.   Notwithstanding any other provision of this Plan, all amounts due and owing for rent, storage, employee salaries, and other related business expenses incurred in the ordinary course of business and accruing during the pendency of the Bankruptcy Case will be paid within thirty (30) days of the Confirmation Hearing without the necessity of filing an Allowed Administrative Claim.

(b)     Time For Filing Fee Claims.

Each Professional Person or other Person (other than an Ordinary Course Professional seeking allowance and payment of $10,000 or less than in any given month) that holds or asserts an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file a Fee Application with the Bankruptcy Court, and serve on all parties required to receive notice, no later than sixty (60) days of the Effective Date.  To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered orders of the Bankruptcy Court regarding procedures for the payment of Fee Claims.  Any objections to an application for the allowance of a Fee Claim must be filed with the Bankruptcy Court and served on the applicant within twenty (20) days after the date the Application was filed and served.

(c)     Allowance of Administrative Expenses.

An Administrative Expense with respect to which notice has been properly filed pursuant to section 5.1(a) of the Plan shall become an Allowed Administrative Expense only to the extent Allowed by Final Order.  An Administrative Expense that is a Fee Claim, and with respect to which a Fee Application has been properly filed pursuant to section 5.1(b) of the Plan, shall become an Allowed Administrative Expense to the extent allowed by a Final Order.

**5.2     Payment of Allowed Administrative Expenses.**

Each holder of an Allowed Administrative Expense against the Debtor shall receive a single Cash payment from the Reorganized Debtor in the amount of the unpaid portion of such Allowed Administrative Expense either (1) upon the later of the Effective Date or the Allowance Date, or (2) upon such terms as may be agreed to in writing by such holder.  It shall be a condition to the Effective Date that the Debtor's estate have escrowed enough funds to satisfy all accrued, anticipated, and requested fees and expenses of all Professional Persons as of the anticipated Effective Date.

**5.3     Treatment of Priority Tax Claims.**

After payment of all Allowed Secured Claims and Allowed Administrative Expense Claims, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such holder's Allowed Priority Tax Claim, Cash from the Reorganized Debtor in the full amount of such Allowed Priority Tax Claim, with seven percent (7%) interest per year, payable in five (5) equal annual Cash payments beginning on the first Business Day of the month following the Effective Date, with successive payments on July 1 of each subsequent year, *provided, however*, that each Allowed Priority Tax Claim shall be paid in full no later than five (5) years after the Petition Date and may receive such other treatment as may be agreed upon in writing by the holder of such Allowed Priority Tax Claim.

**ARTICLE VI**

**CREATION OF REORGANIZED DEBTOR**

**6.1     Creation of the Reorganized Debtor.**

 On the Effective Date, the Reorganized Debtor shall be created for the purpose of operating, preserving and liquidating the Assets for the benefit of the Creditors and satisfying Claims consistent with the Plan.  The Reorganized Debtor shall be entitled and authorized to engage in the conduct of the trade or business of the Debtor solely to the extent reasonably necessary to, and consistent with, the distribution purposes of the Plan.  The Reorganized Debtor shall receive any and all assets coming into or becoming a part of the Debtor's estate and disburse the proceeds from revenues realized from the operation, lease, assignment, sale or other similar transaction involving the property constituting the Reorganized Debtor consistent with the terms of this Plan.

**6.2     Funding of the Reorganized Debtor.**

In addition to the amounts paid to the Debtor by the Debtor's Stock Purchaser, to fund the Reorganized Debtor, by operation of the Confirmation Order, the Reorganized Debtor shall be in possession of and have title to all Assets as of the Effective Date, including any cash (except cash escrowed for payment of estate Professional Persons), bank deposits, certificates of deposit, inventory, furniture, fixtures, equipment, real property, rights, contracts, claims and causes of action, garnishments, and all documents evidencing and relating to the ownership of estate property. All accounts receivable of the Debtor shall be deemed, as of the Effective Date, to have been assigned to the Reorganized Debtor. The conveyances of all property of the Debtor's estate shall be accomplished pursuant to the Plan and the Confirmation Order and shall be effective upon the Effective Date without the need of further documentation or instruments of conveyance, other than the Plan and the Confirmation Order. Upon the Effective Date, the Reorganized Debtor shall also be deemed to have taken (a) an assignment of all Estate Actions, and (b) an assignment, bill of sale, deed and/or release covering all remaining Assets. The Reorganized Debtor may present such orders as may be necessary to require third parties to accept and acknowledge such conveyance to the Reorganized Debtor. Such orders may be presented without further notice other than as has been given in this Plan.

**6.3     Name of Reorganized Debtor.**

The Reorganized Debtor shall retain the name "Henry S. Miller Commercial, LLC," but may do business under any name the Reorganized Debtor deems advisable or which is necessary or appropriate and allowable by law.

## ARTICLE VII

## VESTING OF ASSETS

On the Effective Date, all property of the estate of the Debtor, including but not limited to any and all rights, claims, causes of action, or Estate Actions, whether known or unknown, asserted or unasserted, at law or equity, and whether arising prepetition or postpetition, and whether arising pursuant to the Bankruptcy Code or other applicable law, including without limitation all rights, claims, or causes of action referenced within the body of, or exhibits attached to, the Plan, the Disclosure Statement, or the Debtor's Schedules or Statements of Financial Affairs, shall vest in the Reorganized Debtor free and clear of all Liens or encumbrances. To the extent any court of competent jurisdiction determines under applicable law that, notwithstanding the provisions of the Plan, a cause of action is not assignable, then any assignment of such cause of action pursuant to the Plan shall be void *ab initio;* provided, however, that the proceeds of any such cause of action shall be transferred to the Reorganized Debtor upon receipt by the Debtor.

To the extent necessary or appropriate, the Reorganized Debtor may be substituted as the plaintiff in any or all lawsuits pending in which the Debtor is plaintiffs or are seeking relief. To the extent that a claim may not be assigned under applicable law, then such litigation will be brought by the Reorganized Debtor with the Debtor as the nominal party and all proceeds from any such litigation shall be assigned by Debtor to the Reorganized Debtor. The Reorganized Debtor shall be and hereby is appointed the sole corporate representative of the Debtor for purposes of prosecuting any and all rights, claims, or causes of action, including but not limited to, all Estate Actions and actions arising pursuant to Chapter 5 of the Bankruptcy Code, whether known or unknown, asserted or unasserted, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law. The Reorganized Debtor may, in its sole discretion, prosecute, settle, or dismiss rights, claims, or causes of action, and all proceeds therefrom shall be property of the Reorganized Debtor; *provided, however,* that authority to pledge, assign, hypothecate, settle, compromise, or dismiss any claim or cause of action in the Diamond State Litigation shall require the unanimous consent of the Debtor and Stanley up to the amount of $5 million, the Debtor shall have sole discretion to settle, compromise, pledge, assign, or hypothecate, the Diamond State Litigation for amounts exceeding $5 million, and the Judgment Creditors shall support the Debtor, to the best of their abilities, toward the recovery from such actions recognizing higher recoveries will enhance and benefit the estate.

## ARTICLE VIII

## CORPORATE AUTHORITY

All actions and transactions contemplated under the Plan and the Disclosure Statement shall be authorized upon confirmation of the Plan without the need of further board, officer, or ownership resolutions, approval, notice, or meetings, other than the notice provided by serving this Plan on all known creditors of the Debtor, all equity Interest holders as of the entry of the order approving the Disclosure Statement, and all current members, officers, or management of the Debtor. The Confirmation Order shall include provisions authorizing and directing the President and Secretary and other officers and authorized representative(s) of the Debtor to execute such documents as are necessary to effectuate the Plan, which documents shall be binding on the Debtor, the Debtor's Creditors, and all of the Debtor's equity Interest holders. Subject to the provisions of this Plan, the Reorganized Debtor is vested with authority to take any action on behalf of the Debtor that would otherwise require the approval of the members, managers, or officers of the Debtor. The Reorganized Debtor's management and employees as of the Confirmation Date may be employed by the Reorganized Debtor at the same or similar rates and terms as existed during the pendency of the Bankruptcy Case. From and after the Effective Date, the existing managers and officers of the Debtor shall have no further duties or responsibilities with respect to the Debtor or the Reorganized Debtor, except to the extent employed by the Reorganized Debtor after the Effective Date.

The Plan constitutes an express agreement between the Reorganized Debtor and the Judgment Creditors to prosecute the Diamond State Litigation for the joint benefit of the Judgment Creditors and the Reorganized Debtor as provided in Section 4.3(b) of this Plan. The Reorganized Debtor warrants and covenants that it will use its best efforts and all reasonable means to pursue the claims in the Diamond State Litigation. Notwithstanding the foregoing, the treatment of the Judgment Creditors' claims and the Judgment Creditors' forbearance as provided in Sections 16.20 and 16.21 of the Plan is not contingent upon any guaranty of the outcome of the Diamond State Litigation or the specific amount of any monetary payment to the Judgment Creditors from the Net Proceeds of the Diamond State Litigation. If however, the Bankruptcy Court or another court of competent jurisdiction determines that the Debtor has breached its warranty and covenant herein, the injunction(s) provided under Section 16.21 of the Plan shall terminate in accordance with the terms thereof.

## ARTICLE IX

## LIQUIDATION OF ASSETS AND DISTRIBUTION OF PROCEEDS

### 9.1 Reorganized Debtor to Operate, Preserve, and Liquidate or Abandon All Assets and Distribute Proceeds.

The Reorganized Debtor shall operate in the ordinary course of business, sell, transfer, assign, convey, lease, use, or otherwise liquidate all property of the Reorganized Debtor, and use the proceeds thereof to pay (a) the Reorganized Debtor's administrative costs and expenses and (b) Allowed Administrative Expenses and Allowed Claims in Classes 1 - 3 as designated within the Plan, unless the Reorganized Debtor deems any asset to be of inconsequential value or burdensome to the Reorganized Debtor. Further, the Reorganized Debtor may abandon any other asset within its reasonable business judgment save and except the Diamond State Litigation. The proceeds of such liquidation shall be distributed as provided in the Plan. Further, the proceeds of such liquidation shall, to the extent possible, be distributed in the same taxable year in which received or obtained by the Reorganized Debtor; provided, however, that the Reorganized Debtor may retain an amount of such funds as may be reasonably necessary to maintain the value of the Reorganized Debtor's Assets or to meet claims and contingent liabilities (including disputed claims). The Reorganized Debtor's efforts to liquidate its Assets shall be continual so that it may make timely distribution to holders of Allowed Claims.

Without limitation of any of the foregoing, the Reorganized Debtor hereby retains and is permitted to prosecute from and after the Effective Date and shall prosecute all Estate Actions, including, without limitation, all actions and claims disclosed or referenced in the Debtor's Schedules and/or Disclosure Statement, including the following:

| Dallas Bayou Bend Ltd., et al. v. Steven Defterios and Henry S. Miller Commercial Co., Case No. 06-12902-A, 162nd District Court, Dallas County, Texas (transferred post-judgment from the 14th Judicial District) | Judgment rendered by the 14th Judicial District Court, Dallas County, Texas; Appeal to Fifth District Court of Appeals, Dallas, Texas; Appellate Case No. 05-08-0176-CV |
|---|---|
| Henry S. Miller Commercial Company and Steven Defterios v. Diamond State Insurance Company, Newsome, Terry & Newsome, LLP, and Steven K. Terry, Case No. 09-01306E | 101st District Court, Dallas County, Texas |

Although the Debtor does not believe it holds viable causes of action or ability to recover based on the following, from and after the Effective Date, the Debtor does hereby retain and is revested with all Estate Actions from and after the Effective Date, including: (a) Claims against Henry S. Miller Realty Services, LLC, Henry S. Miller Central Services, LLC, Henry S. Miller Brokerage, LLC, Henry S. Miller Realty Management, LLC, Henry S. Miller Consulting, LLC, Henry S. Miller Financial Services , LLC, Henry S. Miller Projects, LLC, Henry S. Miller Brokerage II, LLC, Geary Porter and Donovan, P.C. and Regions Bank for (i) fraudulent conveyance, avoidance under Chapter 5 of the Bankruptcy Code or Chapter 24 of the Texas Civil Practice and Remedies Code, defalcation, civil theft, tortious interference with existing contractual or prospective relations, conversion, fraud, negligence, and alter ego, (ii) conspiracy with respect to the causes of action listed *infra* against any officers or managers and (iii) aiding and abetting the acts which give rise to the causes of action listed *infra* against any officers or managers; and (b) Claims against any officers or managers for breaches of fiduciary duty (including, but not limited to, the duty of loyalty and duty of care), defalcation, avoidance under Chapter 5 of the Bankruptcy Code or Chapter 24 of the Texas Civil Practice and Remedies Code, conspiracy, aiding and abetting breaches of fiduciary duty, corporate waste, conspiracy to fraudulently convey assets of the Debtor, aiding and abetting the fraudulent assets of the Debtor, fraudulent conveyance, civil theft, tortious interference with existing contractual or prospective relations, conversion, fraud, and negligence.  Notwithstanding the foregoing, the Debtor shall not pledge, assign, hypothecate, release, discharge, abandon, or settle any of the claims against parties set forth in this paragraph until completion of all Plan payments to Class 3.2.

**9.2   Control of Books and Records.**

On and after the Effective Date, the Reorganized Debtor shall have complete and exclusive access to, and control of, all books and records of the Debtor.  The Debtor, any management personnel, brokers, appraisers, and other professionals shall immediately surrender all such books and records to the Reorganized Debtor on the Effective Date.

## ARTICLE X

## DUTIES AND POWERS OF THE REORGANIZED DEBTOR

**10.1      The Reorganized Debtor's Powers.**

Subject to the terms of the Plan, the Reorganized Debtor shall have full power and authority, without further notice or Bankruptcy Court approval, to:

(a)      Perfect and secure its rights, title, and interest to any property comprising the estate;

(b)      Operate in the ordinary course of business for purposes of making distributions under the Plan;

(c)      Sell or convert all assets of the estate to Cash and distribute the Net Proceeds pursuant to the Plan, subject to the terms otherwise set forth in the Plan or Confirmation Order;

(d)      Settle or dismiss litigation claims that the Reorganized Debtor determines in its sole discretion should be settled, subject to the terms otherwise set forth in the Plan or Confirmation Order, including Article VII of the Plan;

(e)      To contract and sell the Reorganized Debtor's estate or any part or parts thereof for such purchase price and for cash on such terms as the Reorganized Debtor shall deem appropriate, subject to the terms otherwise set forth in the Plan or Confirmation Order;

(f)      Pay and discharge costs, expenses, or obligations deemed necessary to preserve the estate or any part thereof or to preserve the Reorganized Debtor;

(g)      Improve or repair the Reorganized Debtor's properties or any parts thereof as may be necessary to effectuate the orderly liquidation thereof;

(h)      Purchase insurance sufficient to protect fully the Reorganized Debtor's properties or any part or parts thereof and to protect such properties from liability;

(i)      Maintain bank accounts in which Cash of the Reorganized Debtor is deposited;

(j)      Draw checks and make disbursements;

(k)      Employ such attorneys, accountants, appraisers, and any other professionals as are necessary in the administration of the Reorganized Debtor or for prosecution of litigation claims belonging to the Debtor, and to compensate the same from the Reorganized Debtor's estate, which professionals may be professionals retained before the Effective Date by the Debtor; such expenses shall be paid without notice, Bankruptcy Court approval, or order;

(l)      Employ auctioneers, brokers, and sales representatives;

(m)      Take any action necessary to protect the Reorganized Debtor's estate or to increase the value of the Reorganized Debtor's assets;

(n)      Enter into contracts and execute negotiable and non-negotiable obligations;

(o)      Sue and be sued;

(p)      Appoint, remove, and act through agents, managers, and employees, and confer upon them such power and authority as may be necessary or advisable;

(q)      Review and determine the allowance of Claims or Interests and file objections to any Claim or Interest that the Reorganized Debtor disputes;

(r)      Seek the valuation of assets by appraisers, valuation experts, or by the Bankruptcy Court;

(s)      Borrow money pursuant to the terms of the Plan;

(t)      Withhold employment and income taxes, or other taxes as is appropriate;

(u)      Prosecute to final judgment all litigation of the Reorganized Debtor's Claims and Estate Actions.  The Reorganized Debtor may also bring or defend those appeals of litigation claims if it determines that doing so is in the best interest of the estate; and

(v)      Take such other actions, as may be necessary or helpful to consummate the Plan.

**10.2****Management of Estate.**

The Reorganized Debtor shall have such other or additional powers as may be vested in or assumed by the Reorganized Debtor pursuant to the Plan or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.  The Reorganized Debtor shall exercise such powers in accordance with the provisions of the Plan.

The Reorganized Debtor shall invest all funds received in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid, and low-risk investments, such as Treasury bills.

**10.3****Maintenance of Records.**

The Reorganized Debtor shall keep or cause to be kept books containing a description of all property from time to time constituting the estate and an accounting of all receipts and disbursements of Reorganized Debtor's property or the proceeds thereof.

**ARTICLE XI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**11.1****Order of Distribution of Cash.**

The Reorganized Debtor shall distribute or reserve available Cash of the estate in the following order of priority:

(a)    Any Cash or other property that is subject to the valid Lien and Allowed Claim of a Class 1 Secured Creditor shall be distributed to the holders of the Allowed Class 1 Secured Claims upon the sale or liquidation thereof up to the Allowed Amount of such Secured Claim, with interest at the rate set forth in the Secured Claimant's prepetition loan documents;

(b)    To pay Allowed Administrative Expense Claims pursuant to Article V of the Plan, to the extent not satisfied by funds escrowed by the Debtor as of the Effective Date;

(c)    To pay the post-confirmation expenses of the Reorganized Debtor for preserving, liquidating, and administering the remaining estate Assets and collecting the estate's outstanding receivables and Estate Actions;

(d)    To pay Allowed Priority Tax Claims and Allowed Priority Unsecured Claims of Class 2 pursuant to the Plan, in the order of priority prescribed by the Bankruptcy Code section 507(a) as applicable to such Allowed Claims;

(e)    To pay Allowed General Unsecured Claims of Class 3 pursuant to the Plan;

(f)    In the event funds remain or become available after paying all Class 3 Creditors, without interest, and all costs and expenses of the Reorganized Debtor, the Reorganized Debtor shall distribute any residual funds or equity to the Stock Purchaser of new equity in the Reorganized Debtor.

**11.2****Timing of Distributions.**

The Reorganized Debtor shall make all payments upon the Effective Date that are required by the Plan to be made on the Effective Date.  Otherwise, distributions to Creditors shall be made by the Reorganized Debtor each time it has accumulated sufficient funds to merit a distribution, considering the number of Creditors and dollar amount of their Allowed Claims, or when the Reorganized Debtor has determined that no additional funds are likely to be collected.

**11.3**    **Distributions to be Pro Rata Within Class.**

All distributions constituting partial payment to a Class of Allowed Claims shall be made on a Pro Rata basis to the holders of Allowed Claims in such Class. Pursuant to Plan section 4.3, Stanley shall be the distribution agent responsible for all distributions to Class 3.2 and shall be entitled to the Exculpation and Immunity Regarding Distributions in section 11.12 of the Plan.

**11.4**    **Federal Tax Identification Number.**

The Reorganized Debtor may suspend distribution to any Creditor that has not provided the Reorganized Debtor with its Federal Tax Identification number or social security number, as the case may be.

**11.5**    **Means of Cash Payment.**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Reorganized Debtor's option, by wire transfer from a domestic bank, except that payments made to foreign creditors holding Allowed Claims may be paid in such funds and by such means as are customary or as may be necessary in a particular foreign jurisdiction.

**11.6**    **Delivery of Distributions.**

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proof of Claim filed by such holders (or at the last known addresses of such a holder if no proof of Claim or proof or equity Interest is filed or if the Reorganized Debtor has been notified in writing of a change of address), except as provided below. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtor until such distributions are claimed. All claims for undeliverable distributions shall be made on or before the first anniversary date of such distribution. After such date, all unclaimed property shall revert to the Reorganized Debtor, and the claim of any holder with respect to such property shall be discharged and forever barred.

**11.7**    **Time Bar to Cash Payments.**

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof. Requests for reissuance of any such voided check shall be made in writing directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any such request for reissuance shall be made on or before the later of (a) the first anniversary of the distribution or (b) ninety (90) days after such check became null and void. After such date, all claims in respect to voided checks shall be discharged and forever barred.

**11.8**    **No Distributions Pending Allowance.**

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

**11.9**    **Withholding of Distribution on Account of Contested Claims.**

Except as limited by section 11.10, the Reorganized Debtor shall withhold from any distribution an amount sufficient to be distributed on account of the full amount of Contested Claims (the "Withheld Distribution Amount"). The Withheld Distribution Amount shall be placed in the Contested Claims Escrow held by the Reorganized Debtor. To the extent requested by the Reorganized Debtor or the holder of the Contested Claim, the Bankruptcy Court may estimate (upon proper notice and an opportunity for hearing to the holder of the Contested Claim) the amount to be placed in escrow (the "Contested Claims Escrow") on account of any Contested Claim, which amount need not be the full amount of the asserted Claim.

**11.10     Distributions After Allowance.**

Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.  With respect to any Claim that is a Contested Claim on the Effective Date, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Contested Claim becomes a Final Order, the Reorganized Debtor shall distribute to the holder of such Claim from the Contested Claims Escrow any distribution that would have been distributed to such holder if the Claim had been an Allowed Claim on the Effective Date.  The holder of a Contested Claim shall be entitled to interest on the Withheld Distribution Amount at the rate earned on the Contested Claims Escrow from the date such holder of a Contested Claim would have received as a distribution had the Claim been an Allowed Claim as of the Effective Date.

**11.11     Distributions After Disallowance.**

Any Withheld Distribution Amount in the Contested Claims Escrow after an objection to a Contested Claim has been resolved by Final Order of the Bankruptcy Court shall be distributed in accordance with the provisions of the Plan.  The Reorganized Debtor may and shall rely on an order of the Bankruptcy Court fixing the amount of a Claim or disallowing a Claim.  The Reorganized Debtor shall make no further reserve on account of a Contested Claim that has been disallowed or reduced by the Bankruptcy Court, unless the affected Creditor obtains a stay pending appeal that requires that the Reorganized Debtor maintain a reserve on account of such Claim.  In no event shall the reversal or modification on appeal or reconsideration of a Bankruptcy Court order disallowing a Claim affect the validity or require the disgorgement of any distributions previously made pursuant to the Plan if such Creditor did not obtain a stay pending reconsideration or appeal that required a further or continuous reserve.

**11.12     Exculpation and Immunity Regarding Distributions.**

**The Debtor, Reorganized Debtor, and their Representatives, from and after the Effective Date, are hereby exculpated by all Persons, holders of Claims and Interests, entities and parties-in-interest receiving distributions under the Plan from any and all claims, causes of action, and other assertions of liability arising out of the Debtor's, Reorganized Debtor's, and their Representatives' discharge of their powers and duties conferred upon them by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or applicable law, provided such act or lack of action was contemplated and authorized by the terms of the Plan or Plan Documents, except that the foregoing exculpation shall not apply to willful misconduct or gross negligence.  No current holder of a Claim or an Interest, and no representative thereof, shall have or pursue any claim or cause of action (a) against the Debtor, Reorganized Debtor, and their Representatives for making payments or taking any action in accordance with the Plan or for implementing the provisions of the Plan or (b) against any holder of a Claim for receiving or retaining payments or other distributions as provided for in the Plan.**

**ARTICLE XII**

**PROCEDURES FOR RESOLVING AND TREATING
CONTESTED AND DISPUTED CLAIMS UNDER THE PLAN**

**12.1     Objection Deadline.**

As soon as practicable, but in no event later than six (6) months after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon each holder of each Claim to which an objection is filed.

**12.2     Prosecution of Objections.**

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement, or withdrawal of all objections to Contested Claims may be made by the Reorganized Debtor.  Any party-in-interest may seek authority from the Court to file a claim objection(s) upon (i) making written demand on

the Reorganized Debtor; (ii) failure to bring such claim objection(s) by the Reorganized Debtor within thirty (30) days of receipt of the written demand; and (iii) upon order of this Court after a hearing and at least twenty (20) days' notice to the Reorganized Debtor.

## ARTICLE XIII

### PROVISIONS REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN

**13.1** **Assumption.**

The Plan constitutes a motion by the Debtor to assume, as of the Effective Date, all executory contracts, including any outstanding broker agreements, and unexpired leases of the Debtor that (a) were not assumed or rejected prior, (b) did not expire on their own terms prior to the Effective Date, (c) are not listed for rejection below, or (d) were not the subject of a motion to assume or reject pending on the Confirmation Date.

Contracts to be rejected in Plan:

| Contract Party | Contract Description | Rejection Date, if any |
|---|---|---|
| East Lamar, L.P. | Suite 175 at 2301 East Lamar, Arlington, Texas | Previously rejected by Final Order of the Court, entered April 9, 2010, Docket No. 123 |
| Pitney Bowes | P700 postage meter and related equipment | Previously rejected by Final Order of the Court, entered April 9, 2010, Docket No. 123 |
| | | |
| | | |

Included within the Debtor's assumption of contracts, the Debtor hereby is assuming their contracts with all Professionals Persons utilized postpetition by the Debtor in or related to the Bankruptcy Case, including The Curtis Law Firm, PC, Geary, Porter & Donovan, Shields, Britton & Fraser, PC, Strasburger & Price, LLP, and Shannon, Gracey, Ratliff & Miller, LLP, and those other professionals, if any, listed within the attachments, as may be amended or supplemented, to the Court's Final Order granting Debtor's application to employ professionals utilized in the ordinary course of business, entered at Docket No. 109 of the Bankruptcy Case. No other contracts with Professional Persons are assumed and/or cured by the Plan other than as expressly set forth in this subparagraph.

**13.2** **Bar to Rejection Claims.**

If the rejection of an executory contract or unexpired lease results in a claim for damages by the other party or parties thereto, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or their respective properties or their agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days after the Effective Date.

## ARTICLE XIV

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**14.1** **Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date of the Plan is subject to the occurrence of the following conditions precedent:

(a)    All documents effectuating the Plan shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein;

(b)    The Stock Purchaser shall have funded to the Debtor Four Hundred Thousand Dollars ($400,000.00) to purchase the new equity in the Reorganized Debtor;

(c)    Debtor shall have escrowed, in the trust account of their undersigned bankruptcy counsel or otherwise, an amount necessary to satisfy all accrued, anticipated, and requested fees and expenses of all Professional Persons as of the anticipated Effective Date; and

(d)    The Confirmation Order shall have become a Final Order or shall not be stayed by a court of competent jurisdiction.

**14.2    Waiver of Conditions.**

The conditions to the Effective Date may be waived, in whole or in part, by the Debtor, at any time, with notice to all parties in interest and/or an order of the Bankruptcy Court.  The failure to satisfy or waive any condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

**ARTICLE XV**

**RETENTION OF JURISDICTION**

**15.1    Scope of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under, or related to the Bankruptcy Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine pending motions for the assumption or rejection of Contracts, and the allowance of Claims resulting therefrom.

(b)    To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

(c)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or equity Interest;

(e)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(f)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(g)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, and to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    To hear and determine all applications for the allowance of Administrative Expenses, including all Fee Applications and Fee Claims and any objections thereto;

(i)      To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(j)      To enter and implement orders to take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions provided for in the Plan and the Confirmation Order;

(k)      To recover all assets of the Debtor and property of the estate, wherever located;

(l)      To hear and determine matters concerning state, local, and federal income taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)      To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)      To hear and determine all actions commenced or prosecuted by the Reorganized Debtor pursuant to sections 505, 510, 542-45, 547-50, and 553 of the Bankruptcy Code, collection matters related thereto, and settlements thereof;

(o)      To hear and determine any disputes concerning Contested Claims;

(p)      To hear and determine any disputes concerning the validity or priority of Liens against the Collateral securing or purporting to secure any Secured Claim; and

(q)      To enter a Final Decree closing the Bankruptcy Case.

**15.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.**

If the Bankruptcy Court abstains from exercising jurisdiction, declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including matters set forth in section 15.1 of the Plan, this Article XV shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE XVI**

**MISCELLANEOUS PROVISIONS**

**16.1    Intentionally Omitted.**

**16.2    Setoff and Other Rights.**

In the event that the Debtor has a claim of any nature whatsoever against the holder of a Claim, the Debtor or the Reorganized Debtor may, but are not required to, setoff against the Claim (and any payments or other distributions to be made in respect to such Claim hereunder), subject to the provisions of section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any claim the Debtor or the Reorganized Debtor have against the holder of a Claim.

**16.3    Injunctions.**

*The Confirmation Order shall contain such injunctions as may be necessary.  Without limiting the generality of the foregoing, such injunctions shall include an absolute prohibition from collecting Claims in any manner other than as provided for in the Plan, and such releases, discharges, and injunctions in favor of the Debtor's and the Reorganized Debtor's present or former Representatives, shall include any and all claims against the Debtor's present and former members, managers, affiliates, insiders, contractors and prepetition lenders, and is acceptable to the Judgment Creditors as it is understood and agreed that same will enhance the*

*Debtor's ability to successfully reorganize and enable it to meet its Plan obligations. Additionally, subject to Section 16.21, such injunctions shall include an absolute prohibition against the Judgment Creditors, and/or any of their respective principals, agents, representatives, transferees, assigns, or attorneys, including Stanley, from ever commencing an involuntary bankruptcy proceeding under the Bankruptcy Code against the Reorganized Debtor, its parent, or any of the Debtor's or Reorganized Debtor's present or former Representatives, present and former members, managers, affiliates, insiders or contractors, or seek to convert the Debtor's Bankruptcy Case to Chapter 7 or seek to modify the Plan.*

**16.4    Injunction Regarding Claims Against the Debtor.**

*From and after the Confirmation Date, all persons or entities that hold, have held, or may hold Claims against or Interests in the Debtor, except as may be expressly stated otherwise herein with respect to the Judgment Creditors, are permanently restrained and enjoined from, directly or indirectly:*

*(a)    Commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, or Assets of the Debtor to collect or recover any property on account of any such Claim or Interest;*

*(b)    Enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order to collect or recover any property on account of any such Claim or Interest against the Debtor or the Reorganized Debtor, or Assets of the Debtor;*

*(c)    Creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor or the Reorganized Debtor, or the Assets of the Debtor;*

*(d)    Asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due the Debtor or the Reorganized Debtor, or the Assets of the Debtor, except as otherwise allowed by the Bankruptcy Court or Bankruptcy Code;*

*(e)    Commencing or continuing any action against the Debtor or the Reorganized Debtor, or the Assets of the Debtor in any manner or forum in respect of such Claim or Interest that does not conform to or comply with or that is inconsistent with the Plan; and*

*(f)    Taking any action to interfere with the implementation or consummation of the Plan.*

Notwithstanding the foregoing, however, nothing herein shall prohibit any holder of a Claim or Interest from prosecuting a proof of Claim or Interest in the Bankruptcy Case or from enforcing such holder's rights under the Plan.

**16.5    Term of Injunction or Stay.**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**16.6    Responsible Party Injunction.**

*Except with respect to the Judgment Creditors, which are addressed in the following paragraph, the Confirmation Order shall constitute and provide for an injunction by the Bankruptcy Court as of the Effective Date and shall include an absolute prohibition against any holder of a Claim, Contested Claim, Allowed Claim, Allowed Secured Claim, Priority Tax Claim, or any other tax Claim, except as may be expressly stated otherwise herein with respect to the Judgment Creditors, from commencing or continuing any action or proceeding against any Representative, affiliate, responsible person, or officer or member of the Debtor for payment of a Claim, except as expressly reserved in the Plan, (including but not limited to any trust fund liabilities, constructive trusts, statutory trusts, civil or criminal fines, tax penalties, interest or base tax liability, restitution payments, or liabilities arising from contribution, subrogation, warranty, indemnification, or guarantee agreements) as long*

*as the respective creditor receives the full payment on its Claims to which it is entitled under the Plan. The injunctions provided within this paragraph shall not constitute releases of the Representatives from liability that may exist on any unpaid sales or withholding taxes for which any Representative may be responsible or constitute a release in the event that the respective creditor does not receive the full payment on its Claims to which it is entitled under the Plan.*

*With respect to the Judgment Creditors, the Confirmation Order shall constitute and provide for an injunction by the Bankruptcy Court as of the Effective Date and shall include an absolute prohibition against any Judgment Creditor, except as may be expressly stated otherwise in paragraph 16.21 herein, from commencing or continuing any action or proceeding against any Representative, affiliate, responsible person, or officer or member of the Debtor for payment of a Claim, except as expressly reserved in the Plan, (including but not limited to any trust fund liabilities, constructive trusts, statutory trusts, civil or criminal fines, tax penalties, interest or base tax liability, restitution payments, or liabilities arising from contribution, subrogation, warranty, indemnification, or guarantee agreements).*

### 16.7    Exculpation and Release.

*Neither the Debtor nor the Representatives shall have or incur any liability to any holder of a Claim or Interest for any act, event, or omission from the Petition Date through the Effective Date in connection with, or arising out of, the Bankruptcy Case, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. As of the Effective Date, each employee, officer, and member of the Debtor who served in such capacity from and after the Petition Date, the Debtor, and the Representatives shall be deemed to be released from all Claims, demands, and suit, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted, which may be held or asserted by the Debtor, the Reorganized Debtor, or any current or former holder of a Claim or Interest regarding or related to the Debtor or the Debtor's business operations from the Petition Date through the Effective Date, other than the obligations under the Plan.*

### 16.8    Lawsuits.

Upon entry of the Confirmation Order, all lawsuits, litigation, administrative, police, or regulatory actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim or Lien against the Debtor or the Representatives or property of the Debtor's estate, except as may be expressly stated otherwise herein with respect to the Judgment Creditors, shall be subject to the discharge and any other injunctions set forth in the Bankruptcy Code or the Court's Confirmation Order. Such discharge injunctions shall be with prejudice to the assertion of such Claim or Lien in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action in violation of the Bankruptcy Code or the Confirmation Order. All lawsuits, litigation, administrative, police, or regulatory actions, or any other proceedings, judicial or administrative, in connection with the assertion of any Claims by the Debtor shall become property for the Reorganized Debtor to prosecute, settle, or dismiss as the Reorganized Debtor sees fit, subject to the express terms of this Plan.

### 16.9    Insurance.

Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured parties. The Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan, or any provision within the Plan.

### 16.10    De Minimis Distributions.

No distribution of less than $100.00 shall be required to be made to any holder of an Allowed Claim. Such undistributed amount may be retained by the Reorganized Debtor.

**16.11**   **Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid through the entry of a final decree in the Bankruptcy Case.

**16.12**   **Bankruptcy Restrictions.**

From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, 364, Rule 9019, etc.), the Bankruptcy Court, or the United States Trustee's guidelines.  The Reorganized Debtor may compromise claims and controversies post-Effective Date without the need of notice or Bankruptcy Court approval for any settlements.  The Reorganized Debtor may operate the Debtor's business in such manner as is consistent with companies not in bankruptcy without the need of seeking Bankruptcy Court approval with regard to any aspect of the Reorganized Debtor's business.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide, until the entry of a final decree, quarterly operating reports or such other financial reports as the U.S. Trustee may reasonably request.

**16.13**   **Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, the holders of Interests, the Reorganized Debtor, and all of their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor or any other Person, (b) to prejudice in any manner the rights of the Debtor or any other Person or (c) to constitute any admission by the Debtor or any other Person.

**16.14**   **Governing Law.**

Unless a rule of law or procedure is supplied by contract or by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan or the Bankruptcy Case, including the documents executed pursuant to the Plan.

**16.15**   **Modification of Plan.**

Modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and (c) the circumstances warrant such modifications.  A holder of a Claim or equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**16.16**   **Revocation or Withdrawal of this Plan.**

(a)    The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.

(b)    If the Debtor revokes or withdraws the Plan, the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

16.17    **Severability.**

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtor may modify the Plan in accordance with section 16.15 of the Plan so that such provision shall not be applicable to the holder of any Claim or equity Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

16.18    **Termination of Committee.**

The Committee, if any, shall cease to function on the Effective Date of the Plan.

**Closing the Case.**

Upon the Plan being substantially consummated and upon motion by the Reorganized Debtor, a final decree shall be entered containing such provisions as may be equitable.  The Bankruptcy Court may close the case, but shall retain jurisdiction thereafter to hear and decide all matters specified in section 15.1 of the Plan.

16.20    **Discharge of Judgment Creditors' Claims**

The Claims of the Judgment Creditors shall be not discharged in accordance with Section 1141 of the Bankruptcy Code.  The rights to payment of the Judgment Creditors' Claims in accordance with Section 4.3(b) of the Plan shall constitute accord and satisfaction of such Claims.

16.21    **Temporary and Permanent Injunctions Against Judgment Creditors**

For such time as the Reorganized Debtor is not in breach of its warranty and covenant to use best efforts and all reasonable means to pursue the claims in the Diamond State Litigation, the Judgment Creditors are temporarily enjoined from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Reorganized Debtor, or any of the Debtor's Representatives, members, managers, affiliates, insiders, or contractors or any of their Assets to collect or recover any property on account of any such Claim; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order to collect or recover any property on account of any such Claim against the Debtor, the Reorganized Debtor, or any of the Debtor's Representatives, members, managers, affiliates, insiders, or contractors or any of their Assets; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor, the Reorganized Debtor, or any of the Debtor's Representatives, members, managers, affiliates, insiders, or contractors or any of their Assets; (d) commencing or continuing any action against the Debtor, the Reorganized Debtor, or any of the Debtor's Representatives, members, managers, affiliates, insiders, or contractors or any of their Assets in any manner or forum in respect of such Claim that does not conform to or comply with or that is inconsistent with the Plan; and (e) prosecuting any of the claims listed in the Plan, other than those asserted by the Judgment Creditors in the Diamond State Litigation.  At the time of the entry of the Final Order in the Diamond State Litigation, and provided that Reorganized Debtor has not breached its warranty and covenant to use best efforts and all reasonable means to pursue the claims in the Diamond State Litigation, the temporary injunction provided herein shall become a permanent injunction.

**DATED: June 30, 2010**
        **Dallas, Texas**

**Henry S. Miller Commercial, LLC**

**By:    /s/ Sam Kartalis**
        **Sam Kartalis**

**Its:    President**