Stephanie D. Curtis
  Texas State Bar No. 05286800
Mark A. Castillo
  Texas State Bar No. 24027795
The Curtis Law Firm, PC
901 Main St., Suite 6515
Dallas, Texas 75202
Telephone: (214) 752-2222
Facsimile: (214) 752-0709

COUNSEL FOR THE
REORGANIZED DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE:<br><br>**HENRY S. MILLER COMMERCIAL, LLC,**<br><br>    **Debtor.** | §<br>§    **Case No. 09-34422-SGJ-11**<br>§<br>§    **Chapter 11**<br>§<br>§ |

**THE CURTIS LAW FIRM, PC'S MOTION TO RECONSIDER AND
ALTER AND AMEND JUDGMENT UNDER RULE 9023**

TO THE HONORABLE STACEY G.C. JERNIGAN
UNITED STATES BANKRUPTCY JUDGE:

    The Curtis Law Firm, PC (the "Firm"), counsel to the Reorganized Chapter 11 Debtor Henry S. Miller Commercial, LLC, respectfully files this *Motion to Reconsider* (the "Motion") the Court's (1) November 8, 2010 Findings and Conclusions on Final Fee Application [Docket No. 186] (the "Findings and Conclusions"), and (2) November 8, 2010 Order on Final Fee Application [Docket No. 187] (the "Order", and, together with the Findings and Conclusions, the "Orders"), which Orders Approved in Part and Denied in Part the Firm's Final Fee Application (the "Application"). In support of the Motion, the Firm respectfully shows the Court as follows:

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. § 105. This is a core matter pursuant to 28 U.S.C. § 157(b).

2. The relief requested by this Motion is predicated principally by Federal Rule of Civil Procedure 59, as made applicable by Federal Rule of Bankruptcy Procedures 9023.

### II. BACKGROUND

3. The Firm herein endeavors to provide only those facts which are key to the Court's decisions in the Orders and the Firm's request for reconsideration herein.

4. This case was an involuntary case, filed by the holders of approximately $9 million in fraud judgments against the Debtor. Debtor hired its first counsel and spent nearly half a year in involuntary bankruptcy limbo, ultimately obtaining agreement to convert the case to chapter 11. Just over one month after conversion to Chapter 11, on January 29, 2010, the petitioning creditors moved to reconvert the case to chapter 7.

5. The Debtor hired the Firm only 15 days before what was poised to be a highly contentious, costly, dispositive evidentiary hearing to reconvert the case to chapter 7. On February 16, 2010, the Firm immediately went to work for the estate to prepare for the March 3, 2010 re-conversion hearing.

6. Only 7 days after the Firm's retention, the Debtor was served with a notice of Debtor's deposition to be taken on less than 24 hours notice. The Firm immediately moved to quash due to the grossly unreasonable notice and its then unfamiliarity with the facts and issues, and obtained a prompt order from the Court quashing the notice, but only after the deposition took place with the Firm's defense.

7. Due to the immediacy and complexity of the issues, at the Firm's February 26, 2010 hearing on its application to be employed, the Firm requested a continuance of the March 3, 2010 conversion hearing so that the Firm would have more time to investigate the *complex* conversion allegations and issues (including allegations of fraud, breach of duty, and mismanagement) and provide appropriate counsel to the Debtor. The Court summarily denied the request on the grounds that the Debtor (not the Firm) had prior notice of the upcoming conversion hearing. Accordingly, the Firm *promptly* began preparing for the March 3, 2010 conversion hearing.

8. As part of the Firm's preparation of the Debtor's defense to the reconversion motion, the Firm immediately began its investigation, research, analysis, and discussion with the Debtor, and prepared an 18-page response to the reconversion motion. As reflected in the attached witness and exhibit list, finalized by the Firm on March 1, 2010, the Firm's investigations, document gathering and review, and witness interview and preparation, included 40 exhibits (not including sub-parts), and 15 witnesses (not including rebuttal or cross-designated witnesses). See Exhibit 1 hereto, which is a true and correct copy of the Debtor's Witness and Exhibit List for Hearing on Motion to Convert Case to Chapter 7. This document was never filed because, after seeing the Firm's response, the petitioning creditors requested settlement talks to be held in lieu of the conversion hearing. Accordingly, the Firm endeavored to resolve the litigation among the parties, and did.

9. Ultimately, after a few short months of analysis to obtain a complete understanding of the facts, issues, risks, and options, and after holding numerous and extensive face-to-face, email, and phone negotiations, the Firm was able to help bring the parties together toward settlement of the litigation through a confirmable plan that (a) pays hundreds of

thousands of dollars to the estate's unsecured creditors, and (b) allows for cooperation toward continued litigation of millions of dollars against insurers and insureds, and agreed distributions of the recoveries therefrom.[1]

### III.    RELIEF REQUESTED UNDER RULE 9023

**A. Legal Grounds and Standards**

10.    By this Motion, the Firm respectfully requests the Court reconsider[2] its Orders pursuant to Fed. R. Civ. P. 59(e) as made applicable by Fed. R. of Bankr. P. 9023, and alter or amend its Orders.[3]

11.    In this case, the Firm has timely filed this Motion within fourteen (14) days from the entry of the Orders on November 8, 2010.

12.    Generally speaking "…Rule 59(e) does not set forth any specific grounds for relief."  See *In re Berg*, 383 B.R. 631, 640 (Bankr. W.D. Tex. 2008).  However, case law in the Fifth Circuit has set forth two basic grounds for granting relief under Rule 59(e), they are (i) to present newly discovered evidence or (ii) to correct manifest errors of law or fact.[4]

---

[1] The Plan's structure is not unlike typical 524(g) channeling injunctions as the parties in interest will cease the litigation between them and focus on agreed distributions of recoveries for the creditors by pursuing insurance recoveries.

[2] See *Fletcher v. Apfel*, 210 F.3d 510, 511-512 (5th Cir. 2000) ("A motion to reconsider which challenges a prior judgment on the merits will be treated as a Federal Rule of Civil Procedure 59(e) motion if it is served within ten [now fourteen] days after entry of the judgment."(internal citations omitted)).

[3] Rule 9023 reads as follows: "New Trials; Amendment of Judgments.  Except as provided in this rule and Rule 3008, Rule 59 Fed. R. Civ. P. applies in cases under the Code.  A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023 (citing Fed. R. Civ. P. 59).

[4] See *In re Berg*, 383 B.R. at 639 ("Rather Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence") (citing *Templet v. HydroChem, Inc*., 367 F.3d 473, 479 (5th Cir. 2004), internal citations omitted); see also *In re Hence*, 358 B.R. 294, 308 (Bankr. S.D. Tex. 2006) ("Motions for new trial or to alter or amend judgment must clearly establish either a manifest error of law or fact or present newly discovered evidence.").  A motion made under Rule 59(e) is very similar to motion made under Rule 60(b).  "Because rule 59(e) motions are subject to much more stringent time requirements than Rule 60(b) motions, Rule 59(e) motions provide relief for the movant on grounds at least as broad as Rule 60 motions." *In re Berg*, 383 B.R. at 639.

13.     Consideration of a motion under Rule 59(e) is within the sound discretion of the bankruptcy court and the "Fifth Circuit Court of Appeals has held that a court has considerable discretion in deciding whether to grant a motion under Rule 59(e)." See *In re Salter*, 213 B.R. 116, 118 (Bankr. S.D. Miss. 1997) (citing 3 Shepard's Editorial Staff *Motions in Federal Court*, 3 Ed. § 9.64, internal citations omitted).

14.     "If properly raised, a motion to alter or amend judgment is not limited to the issues expressly raised therein, but the effect of such a motion to open up the judgment for a correction of any other error which may have intervened in entry of the judgment." See *In re Salter*, 213 B.R. at 118 (citing 25 Fed Proc, L.Ed. 3rd § 58:42).

**B. Manifest Injustice**

15.     A court may also grant relief under Rule 59(e) for manifest injustice. See *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr. S.D. Cal. 2003). The relief a court may grant is at least as broad as what a court may grant under Rule 60.[5]

16.     According to *Blacks*, a manifest error is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence on the record." *See* Blacks Law Dictionary 982 (8th Edition 2004). Manifest injustice is defined as "an error in the trial court that is direct, obvious and observable…" See *Id*.

17.     As shown herein, it would be manifestly unjust to reduce the Firm's requested fees in the amounts reduced in the Orders.

---

[5] Rule 60(b)(6) allows a court to grant a party relief from a judgment for "any other reason justifying relief from the operation of the judgment." See Fed. R. Civ. P. 60(b)(6). As noted in the *Berg* case, "Rule 59 establishes a lower threshold than Rule 60." See *Berg* at 644. However, Rule 60 provides courts the "authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.…" See *Berg* at 644 (citing *Klapprott v. United States, 335 U.S. 601, 614-615 (1949)*). Therefore, the Court is able to grant relief to at least the extent permitted by Rule 60 under a motion made pursuant to the less stringent requirements of Rule 59.

18. <u>Unjust findings of fact, application of law to facts, and legal conclusions</u>. The analysis may begin with a comparison of fees awarded by this Court on two separate cases in November 2010.[6] The chart below sums up the material similarities and differences:

**Case Comparison Chart**

| Case No. 10-30197 Example: Facts:<br><br>**$280,338.91 requested** by 1 firm for **3 months**; **$280,338.91 allowed** | Case No. 10-30197 Example:<br><br>Fees Awarded 11/12/10 (Case No. 10-30197, Doc. No. 168) | Instant Case Example: Facts:<br><br>**$347,526.45 requested** by 2 firms for **6 months**; **$214,443.51 allowed** | Instant Case Example:<br><br>Fees Awarded 11/8/10 (after reductions) |
|---|---|---|---|
| **Similarities:** | | **Similarities:** | |
| "no employees" | $280,338.91 | Same (See Orders at Findings ¶ 9) | $214,443.51[7] |
| "no cash collateral motions" | $280,338.91 | Same (Id) | $214,443.51 |
| "no … debtor-in-possession financing requests" | $280,338.91 | Same (Id) | $214,443.51 |
| "no unsecured creditors committee" | $280,338.91 | Same (Id) | $214,443.51 |
| "no reclamation issues" | $280,338.91 | Same (Id) | $214,443.51 |
| "no Section 503(b)(9) issues" | $280,338.91 | Same (Id) | $214,443.51 |
| "no Section 366 motion to deal with utilities" | $280,338.91 | Same (Id) | $214,443.51 |
| "no taxing authorities asserting their interests" | $280,338.91 | Same (Id) | $214,443.51 |
| 7 attorneys charged 5 or more hours on the case | $280,338.91 | Same (See Orders at Conclusions ¶ 5) | $214,443.51 |
| **Differences:** | | **Differences:** | |
| 3 months in ch. 11 (See Case No. 10-30197, Doc. generally) | $280,338.91 **(or $93,446.30 per month)** | 6 months in ch. 11 (See Doc. generally) | $214,443.51 **(or $35,740.58 per month)** |
| Ultimately capitulated to ch. 7 conversion motion after | $280,338.91 | Successfully confirmed ch. 11 plan after resolving | $214,443.51 |

---

[6] To the extent the below comparison chart or other argument add new facts, for example the findings and conclusions by this Court in Case No. 10-30197, they are admissible under Rule 59 because they occurred after the entry of the Court's Orders. Rule 59(e) allows a court to reconsider an order in the event that new evidence is discovered; however, the rule is equitable in nature. See *In re Berg*, 383 B.R. 631, 639 (Bankr. W.D. Tex. 2008) ("Rule 59(e) , therefore, provides district courts with the power to consider equitable factors and provide relief for any reason justifying relief from the operation of the judgment.") (internal citations omitted).

[7] Inclusive of $109,959.93 awarded to the Firm and $104,483.58 awarded to Debtor's twenty-year litigation counsel. $13,960.50 is pending from Debtor's special counsel related to insurance issues.

| | | | |
|---|---|---|---|
| charging six figures fighting same | | conversion fight | |
| $2.39 million debt owed 1 secured and 25 unsecured creditors (See Case No. 10-30197, Doc. No. 30) | $280,338.91 (or **$117,296.62 per million of debt**) | $10.14 million debt owed 1 secured creditor and 75 unsecured creditors (See Doc. Nos. 112, and 135) | $214,443.51 (or **$21,148.28 per million of debt**) |
| Approximately $5 million in litigation claims preserved for estate | $280,338.91 (or $56,067.78 per million in claims preserved) | Approximately $10 million in litigation claims preserved for estate | $214,443.51 (or $21,444.35 per million in claims preserved) |
| 2 total hearings: first day pleadings (notice procedures and employment of counsel); conversion hearing (See Case No. 10-30197, Doc. Nos. 18, and 27) | $280,338.91 (or $140,169.45 per hearing) | 9 total hearings (See Doc. for hearings on 2/26, 3/23, 4/7, 4/13, 4/29, 4/29, 5/6, 6/30, and 10/25[8]) | $214,443.51 (or $30,634.78 per hearing) |
| $99,460.00 in gross revenue (See Case No. 10-30197, Doc. No. 55) | $280,338.91 (or $2,831.70 per every $1,000 in gross revenue) | $509,837 in gross revenue (See Doc. Nos. 140, 161, and 181) | $214,443.51 (or $421.30 per every $1,000 in gross revenue) |
| $498,663.00 in *net losses* chapter 11 operations (Id) | $280,338.91 (more in fees for lost dollars) | $57,211 *net profit* in chapter 11 operations (Id) | $214,443.51 (less in fees for earned dollars) |
| No lift-stay or adequate protection motions (responded to or heard) (See Case No. 10-30197, Doc. generally) | $280,338.91 (more in fees for nothing) | 1 lift-stay motion prepared, filed, served, noticed, heard, and approved (See Doc. Nos. 124, and 142) | $214,443.51 (less in fees for more work) |
| No contract motions (Id) | $280,338.91 (more in fees for nothing) | 2 contract rejections approved (See Doc. Nos. 101, and 121) and 60+ others assumed in plan for brokers and other professionals | $214,443.51 (less in fees for more work) |
| No disclosure statement prepared or disclosed (Id) | $280,338.91 (more in fees for nothing) | Disclosure statement prepared, disclosed, discussed, revised, approved, solicited (See Doc. Nos. 103, 108, 115, 132, 133, 134, 135, and 137) | $214,443.51 (less in fees for actual approved disclosure statement) |
| No plan prepared or negotiated (Id) | $280,338.91 (more in fees for nothing) | Plan prepared, negotiated, revised, accepted, confirmed, made effective | $214,443.51 (less in fees for fully accepted chapter |

---

[8] Hearings, respectively, on (1) Application to Employ Debtor's Counsel; (2) Application to Employ Ordinary Course Professionals; (3) Motion to reject executory contracts and unexpired leases; (4) Motion to convert case from Chapter 11 to 7; (5) Motion to Reconsider (Order on motion for protective order); (6) Disclosure Statement; (7) Motion for Relief from Stay; (8) Confirmation of Debtor's Plan; (9) Amended Application for compensation of Attorney Fees & Expenses for James D. Shields. These 9 hearings do not include the 9/27 hearing on The Curtis Law Firm, PC's Final Fee Application.

**MOTION TO RECONSIDER UNDER RULE 9023**    **Page 7 of 14**

| | | (See Doc. Nos. 104, 147, 154, 156, and 163) | 11 plan) |
|---|---|---|---|
| $0 brought into the estate (Id) | $280,338.91 (more in fees for nothing) | $400,000 brought into estate at confirmation, with commitments for more, including millions in anticipated litigation proceeds (See Doc. No. 181) | $214,443.51 (less in fees for $400,000+ brought in) |
| $0 paid to creditors in ch. 11 (Id) | $280,338.91 (more in fees for nothing paid to creditors) | **$250,000 paid to unsecured creditors** within 4 months of effective date, with hundreds of thousands more in plan payments required (Id) | $214,443.51 (less in fees for $450,000+ to be paid out) |
| $432.57 blended rate to contest conversion for 3 months and then convert (See Case No. 10-30197, Doc. No. 118) | $280,338.91 | $317.81 blended rate to investigate, negotiate, settle conversion, confirm plan, and commence distributions (See Application Cover Page) | $214,443.51 (fee reductions actually brings the Firm's blended rate to a mere $189.14 – *less than half of blended rate of other case*) |
| $10,544.91 expenses for 3 months (Id) | $280,338.91 (incl., twice as much expenses for half the time) | $4,135.67 expenses for 6 months (after $595 reduction) (Id) | $214,443.51 |

The forgoing case facts and fee results do not make any sense if a consistent and appropriate reasonableness standard and material-benefit standard are applied under *First Colonial* and *Pro-Snax*. *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corporation of America)*, 544 F.2d 1291 (5th Cir 1977); *Pro-Snax*, *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414 (5th Cir. 1998). The Firm provided significantly more "bang for the buck" for this estate and its creditors, and the Orders must be amended to reflect the facts and results of this case and comply with controlling law.

19.    The 800-Pound Gorilla: The Orders appear to take a *per se* approach that a case must include a non-insider secured lender in order to be complex. See Orders at Findings ¶ 9. The Firm believes the facts of this case establish otherwise. If half a dozen judgment creditors

holding $10 million in fraud claims against the Debtor (with vastly insufficient liquid assets to satisfy such judgment), seeking to pursue its affiliates, officers, and directors, putting the Debtor in an involuntary chapter 7, seeking to reconvert the Debtor after agreeing to convert it to chapter 11, deposing the Debtor on less than 24-hours notice, and modifying the Debtor's disclosure statement, plan, and confirmation order numerous times to satisfy ever-changing settlement terms does not constitute an 800-pound gorilla, what does? The petitioning judgment creditors in this case held substantial leverage and bargaining power, and exercised same.

20. <u>The High Difficulty</u>: The Orders state that "[n]othing in this case could fairly be described as involving 'high difficulty,'" but the facts do not support this finding. See Orders at Findings ¶ 15, fn 12. This was an involuntary case. This was a case with a re-conversion motion filed for which the Firm had to prepare without continuance. This was a case involving continuing allegations by the petitioning creditors of whether management violated its duty of loyalty, whether management committed waste or denuded the estate, whether new entities are alter egos of the Debtor, whether fraudulent transfers were conveyed. See Docket No. 70 at ¶ 22. This was a case involving $9 million in fraud judgments. This was a case involving $10 million in estate claims. This was a case that ultimately required the equivalent of a channeling injunction, best-efforts plan commitments, and issues surrounding temporary injunctions, release issues, insurance issues, and appellate issues. The facts of this case absolutely do not support a finding or conclusion that this case did not involve a high degree of difficulty or complex matters.

21. <u>The Prompt Action</u>: The Orders also state that "[n]othing in this case could fairly be described as … requiring 'prompt action'", but, here to, the facts do not support this finding. See Orders at Findings ¶ 15, fn 12. The Debtor hired the Firm *only 15 days before* a contentious,

dispositive evidentiary hearing to reconvert the case to chapter 7. Due to the immediacy and complexity of the issues, only 10 days after the Firm's retention, at the Firm's February 26, 2010 hearing on its application to be employed, the Firm requested a continuance of the March 3, 2010 conversion hearing so that the Firm would have more time to investigate the complex conversion allegations and issues and provide appropriate counsel to the Debtor. The Court summarily denied the request on the grounds that the Debtor (not the Firm) had prior notice of the upcoming conversion hearing. Also, only 7 days after the Firm's retention, the Debtor was served with a notice of deposition to be taken *on less than 24 hours notice*. The Firm immediately moved to quash due to the grossly unreasonable notice and its then unfamiliarity with the facts and issues, and obtained a prompt order from the Court quashing the notice, but only after the deposition took place with the Firm's defense. The facts of this case do not support a finding or conclusion that this case lacked a requirement of prompt action on the part of the Firm.

22.    Uncontested Hearings: The Orders also appear to punish the Firm for reaching resolutions on disputed issues and holding uncontested hearings where, generally, the parties' agreements were announced to or discussed with the Court. See Orders at Findings ¶ 9. The Firm believes that a successful Chapter 11 all but requires negotiations with parties in interest over dispositive matters concerning the case. If the Firm were to have taken the approach of contesting all of its hearings related to pending conversion, pending disclosure statement, pending plan voting, and pending plan confirmation, the Firm is confident the case would not have been confirmed and the fees would be even higher. The fact that the Firm assisted the Debtor in working with opposing parties toward amicable resolutions after appropriate analysis and contentious negotiations, versus extended hearings and potential failures, should be a fact *in favor* of the Firm's Application, not against. See Id; see also Orders at Findings ¶ 11 ("None of

the other hearings (not even the confirmation hearing) were contested."). There is a reason the hearings were not contested in Court. The reason is not because the involuntary-petitioning fraud-judgment creditors were enamored with the efforts of the Debtor's management; the reason was because the Firm did its job appropriately and reasonably to bring the opposing parties toward a prompt and global resolution, and should be compensated commensurate with such work.

23. <u>Res Judicata and Collateral Estoppel</u>: The Orders also appear to revisit the benefit of the Court's confirming the Debtor's Chapter 11 plan. As early as April 27, 2010, due to the status of negotiations with creditors and anticipated needs for moving forward, the Debtor disclosed its anticipated professional fees of $405,000 (including $200,000 for the Firm)[9] in its First Amended Disclosure Statement. See DS at Docket No. 132, p. 11. This disclosure statement was modified on May 10, 2010, but reiterated the expected professional fees of $405,000. See DS, modified, Docket No. 135, p. 11. Creditors did not object to the disclosure statement as being unreasonable, and the Court did not deny the disclosure statement as being misleading. See Order on DS, Docket No. 134. While the Court indicates it "is struggling mightily to understand what was meaningfully accomplished by this Chapter 11 case," this analysis already was done by the Court at the Confirmation Hearing on June 30, 2010 after which the Court entered its Confirmation Order. See Docket No. 156.

24. <u>Litigation Matters: 186.5 hours / $61,479.50 fees. and Plan and Disclosure Statement: 175.5 hours / $64,241.50 fees</u>. For all of the forgoing reasons, the facts and applicable standards under *First Colonial* and *Pro-Snax* merit an increase in the respective fee reductions of $30,739.75 and $32,120.75. In the same month, the Court approved fees for a

---

[9] The Firm's total fees requested actually were less than anticipated and disclosed to the Court and creditors earlier in the case, after several voluntary fee reductions.

much higher amount, for a case that lasted half as long, for a case that was converted, and a case that otherwise had similar facts (but less debt, less preserved litigation claim, and no distributions to creditors but for the chapter 7 trustee's efforts to sell what the debtor did not want to sell). More importantly, as shown above, this case had an 800-pound gorilla, was highly contentious, was complex, and required prompt action from the Debtor's new firm, the Firm. Accordingly, the facts and law support allowance of the full amount of fees requested in these two categories (i.e., an additional $62,860.50 overall).

25.     <u>Leases, Executory Contracts, and Utilities:  18.7 hours / $5,842 fees</u>.  The Orders reduce allowed fees by $2,717.94 due to a misstatement of fact that the work done in this category related to only two leases, which were rejected by motion.  See Orders at Conclusions ¶ 5f.  However, as stated in the Application, the work in this category was not limited to the review, analysis, and rejection of two leases:

> **F. Leases, Executory Contracts, and Utilities (B60)**
> **(Fees – $5,842.00; Total Hours – 18.7)**
> There category includes time spent analyzing any lease and executory contract issues of the Debtor, particularly as to the Debtor's existing broker relationships and unliquidated and contingent claims related thereto.

26.     Per the Debtor's filed schedules, the Debtor held over sixty (60) independent executory contracts with various brokers who held contingent and/or unliquidated commission-type claims against the estate. See Docket No. 112, Schedule F and Schedule G. Per the Application, a large component of the $5,842.00 in fees of category B60 related to analysis and discussion with the Debtor over these executory contracts and their disclosure in the schedules and assumption and treatment in the plan. Accordingly, the facts do not support a fee reduction of $2,717.94 related to category B60, and the Firm respectfully requests that such amount be allowed in full.

### IV. REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

27. Pursuant to Federal Rule of Civil Procedure 52 as made applicable by Federal Rule of Bankruptcy Procedure 7052,[10] the Firm respectfully requests amended or additional findings of fact and conclusions of law substantially consistent with this Motion.[11]

### V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Firm prays the Court (i) grant this Motion, (ii) alter and amend the Court's Orders as requested above, (iii) increase the Firm's allowed fees and expenses by at least $65,578.44, and order that such fees be paid in full in the amount requested, and (iv) grant the Firm any further relief to which it may justly be entitled.

Dated: November 22, 2010.   Respectfully submitted,

  */s/ Stephanie D. Curtis*
  Stephanie D. Curtis
  Texas State Bar No. 05286800
  Mark A. Castillo
  Texas State Bar No. 24027795
  The Curtis Law Firm, PC
  901 Main Street, Suite 6515
  Dallas, Texas 75202
  Telephone: 214.752.2222
  Facsimile: 214.752.0709

  *COUNSEL FOR THE REORGANIZED*
  *CHAPTER 11 DEBTOR*

---

[10] Federal Rule of Bankruptcy Procedure 7052 is made applicable to contested matters by way of reference in Federal Rule of Bankruptcy Procedure 9014(c).

[11] Court's are permitted to enter new findings of fact and conclusions of law in connection with a motion to reconsider. Fed. R. Civ. P. 52(b), as made applicable by Fed. R. Bankr. P. 7052 and 9014.

## CERTIFICATE OF SERVICE

      I hereby certify that, on November 22, 2010, a true and correct copy of the foregoing fee application was served by ECF email or by first-class mail, postage prepaid, to the Debtor, the Office of the United States Trustee, counsel for the petitioning creditors, and all parties who have filed a notice of appearance or a request for notice in this case.

                                      */s/ Mark A. Castillo*
                                      Mark A. Castillo